STATE of Tennessee, Appellee,

v.

**Isaac Earl EDGIN, Appellant.**

Supreme Court of Tennessee,
at Nashville.

May 8, 1995.

Opinion Amending Decision on
Partial Grant of Rehearing
July 10, 1995.

Michael R. Jones, Springfield, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Kathy Morante, Deputy Atty. Gen., Christina S. Shevalier, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

BIRCH, Justice.

The appellant, Isaac Earl Edgin, was convicted by jury of two counts of aggravated rape. The trial court imposed a twenty-year sentence on each count, to be served concurrently, in the Department of Corrections.

On direct appeal, the Court of Criminal Appeals found that the State had violated the *Brady* [1] rule with regard to a certain statement made by J1 [2] and ordered a new trial in the count wherein J1 was the victim. The court affirmed, however, the conviction which grew out of Edgin's conduct with J2.

In applying for review under Rule 11, Tenn.R.App.P, Edgin argues that the State used the "veracity" of one victim to corrobo-

---

1. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

2. In an effort to protect the identity of the minor victims to the extent appropriate, the older victim will hereinafter be referred to as "J1," and the younger as "J2." At the time of the offenses, J1 was seven years old, and J2 was six years old. At the time of the trial, they were eight and seven, respectively.

rate the testimony of the other. (We take this to mean that testimony of the victims was reciprocally corroborative.) He insists, therefore, that having determined that the State had violated the *Brady* rule, the Court of Criminal Appeals should have reversed also the conviction involving J2.

We accepted Edgin's application for Rule 11 review to determine the correctness of the Court of Criminal Appeals' judgment that the State had violated the *Brady* rule and, if necessary, whether the relief granted was appropriate.

For the reasons herein stated, we find that Edgin has not demonstrated a *Brady* violation. Accordingly, the judgment of the Court of Criminal Appeals is reversed, and the judgment of the trial court is reinstated.

## I

The salient facts of record indicate that all of the activity here involved occurred in the course of three days in March/April 1991 when the minor victims were visiting with Edgin at their foster grandmother's residence. The sexual penetration was accomplished upon each victim in the presence of the other victim. Upon concluding the sexual activity, Edgin threatened to harm them if they were to tell anyone what had happened.

The testimony of each victim was essentially consistent in all material aspects with the testimony of the other. After each victim had testified, the State provided the defendant's counsel with that victim's pretrial statement pursuant to Tenn.R.Crim.P. 26.2(a).[3]

The victims' statements were essentially consistent with their testimony except in one particular: J1's statement mentioned the possibility that a person other than Edgin had abused J1 sexually prior to the incident here involved. Taken by a caseworker employed by the Department of Human Services, the statement is in context as follows:

C: Has anybody else ever done any of those things to you?

J1: [Unintelligible] I think.

C: Who else did something like that to you?

J1: Think somebody has.

C: Do you remember who?

J1: It was named Shawn

C: Shawn who, who is Shawn?

J1: Kind of like my, I can't ever think—

C: Is he like your cousin?

J1: Yeah, it's like that.

C: Where did that happen with Shawn?

J1: Over at house before— [unintelligible] I think.

C: At the Summer House? Was Shawn?

J1: No, not the Summer house, but our house before we moved.

C: Was that when Earl was still living with you?

J1: No.

C: Did, do you still see Shawn?

J1: Not anymore, now that we moved.

C: Can you tell me what happened with Shawn, how that happened, like where—

J1: [Unintelligible] we moved somewhere.

C: You [unintelligible] him before you moved somewhere?

J1: I think. It happened.

C: What do you remember about it happening?

J1: I [unintelligible].

C: Why do you think Shawn did it, then? If you can't remmeber [sic]?

J1: I don't know why he did. [Unintelligible].

C: You do know he did it?

J1: I don't know why he did it [unintelligible].

C: You don't know what happened cause it's been a long time ago?

J1: Hum.

C: Did Shawn put anything inside your bottom?

---

**3.** "After a witness *other than the defendant* has *testified on* direct examination, the trial court, on *motion of a party who* did not call the witness, shall order the attorney for the state or the defendant and his attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified."

J1: Can't remember.

C: So you don't really remember if Shawn did anything or not? Then you see if you don't know it happened, then you shouldn't say that it did.

J1: [Unintelligible] it happened or not.

C: So you forgot and you don't know if it happened or not?

It is the above-quoted statement that Edgin characterizes as "favorable" and "exculpatory." He insists that, pursuant to his discovery requests,[4] the State should have furnished the statement, characterized by him as *Brady* material, prior to trial. He suggests that were the statement provided earlier, he could have attempted to locate "Shawn" and interview him. On the other hand, the State asserts that the statement in question is not *Brady* material.

## II

■ There are four prerequisites a defendant must demonstrate in order to establish a due process violation under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). They are:

1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);

2. The State must have suppressed the information;

3. The information must have been favorable to the accused; and

4. The information must have been material.

*State v. Evans,* 838 S.W.2d 185 (Tenn.1992); *State v. Spurlock,* 874 S.W.2d 602 (Tenn. Crim.App.1993); *Workman v. State,* 868 S.W.2d 705 (Tenn.Crim.App.1993); *State v. Marshall,* 845 S.W.2d 228 (Tenn.Crim.App. 1992); *Strouth v. State,* 755 S.W.2d 819 (Tenn.Crim.App.1986).

■ Moreover, the defendant has the burden of proving a constitutional violation by a preponderance of the evidence. *State v. Spurlock,* 874 S.W.2d at 610. The key to proving a constitutional violation is to show that the omission is of such significance as to deny the defendant the right to a fair trial. *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976).

Even though Edgin's request for *Brady* material was general in nature, it was timely made. Assuming, however, that the State suppressed the statement and that it contained "favorable information," still, to establish a constitutional violation under *Brady,* Edgin would have to demonstrate the materiality of the statement.

In *United States v. Agurs,* the United States Supreme Court discussed three different situations involving *Brady* information and set out the standard of materiality which applies to each. *Agurs,* 427 U.S. at 103–107, 96 S.Ct. at 2397–2399. The three situations are: (1) undisclosed use of perjured testimony by the prosecution; (2) undisclosed information following a *specific* request by the defense; and (3) undisclosed information following a *general* request or no request by the defense. We concern ourselves, here, with the third situation.

The *Agurs* Court held that when there has been a *general* request or no request for *Brady* information, the undisclosed information is "material" if it "creates a reasonable doubt that did not otherwise exist."[5] *Id.* at 112, 96 S.Ct. at 2402.

This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.

*Id.* at 112, 113, 96 S.Ct. at 2402.

■ In the context of all the evidence adduced in the case under submission, we

---

**4.** Edgin had made a timely request for discovery pursuant to Tenn.R.Crim.P. Rule 16; he also made a timely *general Brady* request.

**5.** We note that this standard focuses on the issue of guilt or innocence rather than on the defendant's ability to prepare for trial. *See Agurs,* 427 U.S. at 112, n. 20, 96 S.Ct. at 2402, n. 20.

Further, we note that the standards for materiality in the other situations differ and are often easier for the defendant to meet. *See Id.* at 103, 104, 96 S.Ct. at 2397, 2398. *See also United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (defines more precisely the standard of materiality when a *specific* request has been made).

find J1's reference to "Shawn" to be immaterial, for it is simply not probative on the issue of Edgin's conduct with J1. Though the statement implicated "Shawn," it clearly does not create a reasonable doubt as to Edgin's guilt.

Accordingly, finding no constitutional violation under *Brady,* we reverse the judgment of the Court of Criminal Appeals as it regards the count wherein J1 is the victim and reinstate the conviction. We affirm the conviction in the count wherein J2 is the victim. The sentences are unaffected by this opinion and remain as imposed by the trial court.

ANDERSON, C.J., DROWOTA and REID, JJ., and O'BRIEN, Senior Judge, concur.

### OPINION ON PETITION FOR REHEARING

This case is before this Court on the defendant's motion to be allowed to file Petition for rehearing, filed May 23, 1995. We GRANT the motion and accept the petition for rehearing for the limited purpose of considering our opinion in light of *Kyles v. Whitley,* —— U.S. ——, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).[1]

We find that the standard of "materiality" used in *Edgin* is incorrect under *Kyles.* However, for the following reasons we conclude that our holding remains the same.

In *Kyles,* the Supreme Court of the United States stated clearly that regardless of whether the defendant makes a general request, a specific request, or no request whatsoever for *Brady* material, the standard for "materiality" is the same: i.e., there is constitutional error "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." The Court further stated that the

> touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely

than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the Government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles,* —— U.S. ——, ——, 115 S.Ct. 1555, 1566 (1995) (citations omitted).

Applying this standard to *Edgin,* we find, as stated earlier, that our conclusion does not change. As stated in the opinion, in order to establish a *Brady* violation, the defendant must show

1) The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);

2) The State must have suppressed the information;

3) The information must have been favorable to the accused; and

4) The information must have been material.

*State v. Evans,* 838 S.W.2d 185 (Tenn.1992).

Assuming that the State suppressed the statements, we find that Edgin has not shown that the information was favorable to him or material. The statement described as having been suppressed does not in anyway exculpate Edgin. At most, it suggests that the victim was abused also by someone named Shawn. However, the statement does not suggest that Edgin did not commit the acts which are here involved, nor does it imply that the victim confused Edgin with the "real" perpetrator. Thus, Edgin has failed to show that the statement was "favorable to his defense."

Next, even under the *Kyles* "materiality" standard, Edgin has failed to demonstrate that the statement was material. We find that the fact that the State did not provide

---

1. We grant an extension of time in which to file the petition for rehearing because the *Kyles* opinion on which it is based was only decided on April 19, 1995, and did not come to the defendant's attention until May 22, 1995. This motion and petition were subsequently filed on May 23, 1995. As there was no lack of diligence by defendant, we grant a five-day extension and now proceed on the petition.

the statement to the defense before trial does not "undermine the confidence in the outcome of the trial." As stated above, the statement fails to suggest that Edgin's conduct was other than as charged. Further, despite having received the statement at trial, the defendant did not use it, nor did he seek a continuance in order to investigate it. Thus, we find that there is no "reasonable probability that, had the evidence been disclosed to the [defendant earlier], the result of the proceeding would have been different." *Kyles*, —— U.S. at ——, 115 S.Ct. at 1565.

Therefore, we AMEND our opinion to adopt the standard of "materiality" announced in *Kyles*. As to all other matters, the petition to rehear is, respectfully, DENIED.