IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 4, 2004

## STATE OF TENNESSEE v. WILLIAM J. PARKER, JR.

**Direct Appeal from the Circuit Court for Warren County**
**No. M-7661     Larry B. Stanley, Jr., Judge**

---

**No. M2003-01423-CCA-R3-CD - Filed August 19, 2004**

---

The Defendant, William J. Parker, Jr., was indicted for driving under the influence and driving on a revoked license. A jury acquitted him of the DUI charge, but found him guilty of driving on a revoked license, a Class B misdemeanor. The trial court imposed a sentence of six months, with sixty days to be served in confinement and the balance to be served on probation. In this appeal, the Defendant raises three issues: 1) whether the State's failure to provide him with a copy of his driving record constitutes a violation of his due process rights; 2) whether the trial court erred by admitting into evidence a sworn affidavit; and 3) whether the sentence imposed by the trial court is excessive. We conclude that the trial court erred by admitting the affidavit into evidence. Because we are unable to conclude that the error was harmless, the judgment of the trial court is reversed and the case remanded for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which Jerry L. Smith, J., joined. THOMAS T. WOODALL, J., filed a dissenting opinion.

Bernard K. Smith (at trial), McMinnville, Tennessee; Thomas F. Bloom (on appeal), Nashville, Tennessee, for the appellant, William Parker, Jr.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William M. Locke, District Attorney General; Dale Potter, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Officer Tony Jenkins of the McMinnville Police Department testified that, early in the morning on March 9, 1998, he was on patrol. As he sat at a stop sign, he "heard tires squealing," then saw a red Mitsubishi Eclipse "going a little bit faster" than it should have been. The officer stopped the car. He testified that, upon approaching the driver of the car, he noticed "a strong odor

of alcohol" about the driver, the Defendant, and the Defendant's eyes were "bloodshot." The Defendant was unable to produce a driver's license, but he did have a Tennessee identification card.

The officer had the Defendant perform two field sobriety tests: the finger-to-nose test and the walk-and-turn test. Based on the Defendant's performance of the tests, Officer Jenkins placed him under arrest for DUI. A female passenger was in the car with the Defendant, and the officer testified that she was very intoxicated, so he arrested her as well. The Defendant refused to take a breathalyzer test.

Several witnesses, including the Defendant, testified that the Defendant's "common law wife" had been to a bar on the evening of March 9, 1998. The Defendant received a phone call that his wife, who had "a past history of getting kind of violent and very ill-tempered when she drinks," was intoxicated and he needed to take her home. Despite the fact that he did not have a driver's license, the Defendant drove to the bar to pick up his wife. The Defendant testified that his wife resisted leaving the bar, and she "slung" her drink on him.

The Defendant admitted to driving without a driver's license, but he maintained that his license was "restricted," not revoked. He also testified that he had been stopped by a police officer prior to the incident in question, and the officer simply gave him a ticket for driving without a license. "[W]ithin a week or two" of the instant offense, the Defendant got a new driver's license. Based on this evidence, the jury acquitted the Defendant of driving under the influence, but found him guilty of driving on a revoked license.

The first issue the Defendant raises is whether the State's failure to provide him with a copy of his driving record pursuant to his discovery request violates due process. Under Brady v. Maryland, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963). However, "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481 (1985).

Thus, a defendant must satisfy the following four prerequisites in order to demonstrate a due process violation under Brady v. Maryland:

1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
2. The State must have suppressed the information;
3. The information must have been favorable to the accused; and
4. The information must have been material.

State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995).  The defendant bears the burden of proving a Brady violation by a preponderance of the evidence.  See id.  "The key to proving a constitutional violation is to show that the omission is of such significance as to deny the defendant the right to a fair trial."  Id.

First, the Defendant failed to raise the Brady issue in his motion for a new trial.  Therefore, this issue is waived.  See Tenn. R. App. P. 3(e).  Furthermore, this issue is without merit.  In State v. Wanda Hinson, No. M2000-02762-CCA-R3-CD, 2002 WL 31202134, at *10-11 (Tenn. Crim. App., Nashville, Sept. 27, 2002), this Court held that the defendant was not prejudiced by the State's failure to provide her with the criminal records of three of the State's witnesses.  The court reasoned that the records were public in nature; therefore they were available to the defendant upon request.  See id. at *11.  "Because these arrest and conviction records were equally available to the defendant, the harm that the Brady disclosure requirement was designed to prevent was not present in the instant case."  Id.  Likewise, in this case, the Defendant's driving record was a public record that was available to him upon request.  See Tenn. Code Ann. § 10-7-507.  As his driving record was always available to him, the Defendant was not prejudiced by the State's failure to provide it to him during discovery.

The Defendant's next issue is whether the trial court erred by admitting into evidence the sworn affidavit of Kenneth Birdwell, a records custodian for the Tennessee Department of Safety.  The affidavit states that the "status" of the Defendant's driving privileges on March 9, 1998 was "revoked."  The Defendant's driving record was not admitted into evidence because it obtained "objectionable material."  Defense counsel objected to the admission of the affidavit, saying, "Technically I wouldn't be able to cross-examine the man that says that is his driving record."  The trial judge responded, "Okay, so your objection is hearsay?"  Defense counsel replied, "My objection would be hearsay."  The trial court admitted the affidavit of Mr. Birdwell under the public records exception to the rule against hearsay to show that the Defendant's license was, in fact, revoked.

Tennessee Rule of Evidence 803(8), the public records exception, states that the following is not excluded by the hearsay rule:

> Unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness, records, reports, statements, or data compilations in any form of public offices or agencies setting forth the activities of the office or agency or matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, excluding, however, matters observed by police officers and other law enforcement personnel.

This Court has previously held that driving records maintained by the Tennessee Department of Safety fall within the public records hearsay exception.  See generally State v. Baker, 842 S.W.2d 261, 264 (Tenn. Crim. App. 1992); State v. Donnie Ray Sisk, No. 01C01-9803-CC-00143, 1999 WL 298221, at *4-5 (Tenn. Crim. App., Nashville, May 12, 1999).  However, in this case, the trial court did not admit the Defendant's driving record into evidence.  The only evidence offered by the State

and allowed into evidence by the trial court which indicated that the Defendant's license was "revoked" was the bare affidavit of Mr. Birdwell.

Mr. Birdwell's affidavit was hearsay because it was "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," specifically, that the Defendant's license was revoked at the time of his DUI arrest. Tenn. R. Evid. 801(c). Therefore, the affidavit was inadmissible unless it fell within a hearsay exception. See Tenn. R. Evid. 802. We conclude that, while a defendant's official driving record is admissible under Tennessee Rule of Evidence 803(8), the rule does not allow for the admission into evidence of a bare affidavit stating what the records would show. We do not believe that the rule contemplates the admission into evidence of statements prepared solely for use in litigation. The rule states that public records and reports are admissible when such records set forth "the activities of the office or agency or matters observed pursuant to a duty imposed by law as to which matters there was a duty to report . . . ." Tenn. R. Evid. 803(8). While Tennessee Code Annotated section 55-50-204 requires the Department of Safety to maintain driving records, that section does not require agents of the department to prepare letters or affidavits to be used in litigation. Therefore, the affidavit of Mr. Birdwell was inadmissible hearsay, and the trial court erred by admitting it into evidence.

Furthermore, we conclude that the error was not harmless because it appears to have affected the result of the trial. See Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b). Aside from Mr. Birdwell's affidavit, the State offered no other proof that the Defendant's license had been revoked. The Defendant was the only witness who testified with respect to the status of his driver's license. On direct examination, the Defendant's attorney asked him, "At that time did you realize you were on revoked status?" The Defendant answered,

> The only thing, as God is my witness, the only thing I thought I was doing was driving without a license. I was eligible to get them back two to three months prior to that. I'm guilty of procrastinating to not go back and get my license, which I should have done. I did immediately after that arrest. That is what I am guilty of. That I did not go get those license [sic]. I procrastinated and I should have done it, but I didn't. They were eligible to be gotten back, I don't even know how much, a month, two months, maybe even longer prior to that night. I was under the impression I was driving just without a license. As a matter of fact, I had been pulled over going to work one morning in Nashville the other side of Woodbury and he had told me the same thing and give me a ticket for no drivers license. He told me to get them. Which I again procrastinated. But that is the only thing I am guilty of, as far as driving goes, is driving without a license.

Thereafter his lawyer asked him, "Had you known that you had been on a revoked status or had not had that temporary driver's license, would you have driven that night?" The Defendant responded, "No, sir. I would not have." After the Defendant testified that the police videotape would show that he was not under the influence at the time of his arrest, his lawyer said, "You could still make a good

argument about the license though, you realize that?" The Defendant replied, "Yes, sir. That one is my fault. The license one, I admit. I just did not know that it stayed that status. I thought it was just a no driver's license." Again, his defense counsel inquired, "Did you know that you were still on revoked status, or supposedly were on revoked?" The Defendant answered, "No. At that time I thought it was a no driver's license. That's what I thought, I was on no driver's license." The Defendant further testified that he had no intention to drive on a revoked driver's license.

On cross-examination, the attorney for the State asked the Defendant, "But I thought you told [defense counsel] that you knew that you were driving on no driver's license, but didn't realize it was revoked?" The Defendant replied, "That's exactly what I'm saying. That's what I've said numerous times here. I thought I was driving on no driver's license. At the time I got pulled over, I thought I was on no driver's license." The prosecutor then asked, "When was your license revoked?" The Defendant responded, "I'm not sure, sir."

At no time during his testimony did the Defendant admit that he was, in fact, driving on a revoked driver's license. He said that he did not think that his license was revoked; rather, he thought he was driving without a license.[1] The State bore the burden of proving beyond a reasonable doubt that the Defendant's license was revoked at the time of his arrest. Without the inadmissible affidavit, we must conclude that the evidence with respect to the charge of driving on a revoked license was insufficient to support a conviction. Therefore, we are unable to conclude that the trial judge's error in admitting the affidavit was harmless. Accordingly, we reverse the Defendant's conviction and remand the case for a new trial.[2]

Although we conclude that the Defendant is entitled to relief based on his second issue, we will briefly address his final contention, which is that the trial court imposed an excessive sentence. Driving on a revoked license is a Class B misdemeanor, punishable "by confinement for not less than two (2) days nor more than six (6) months." Tenn. Code Ann. § 55-50-504(a)(1). The trial court ordered the Defendant to serve sixty days in jail, with the balance of his six-month sentence to be served on probation. The Defendant argues that, based on the existence of eight mitigating factors, the trial court should have ordered him to serve only two days in confinement.

The Defendant's argument is without merit for two reasons. First, the technical record reflects that the Defendant submitted only two "catch-all" mitigating factors to be considered by the trial court in sentencing, rather than the eight he proposes in his brief. See Tenn. Code Ann. § 40-35-113(13). Second, the record reflects that the trial judge scheduled a sentencing hearing for January 22, 2003. However, the record does not contain a transcript of the sentencing hearing, which is

---

[1]We note that the jury credited the Defendant's testimony with respect to whether he was driving under the influence and found him not guilty of that charge.

[2]The Defendant also vaguely notes that the admission of the bare affidavit implicates his Sixth Amendment right to confront witnesses against him. However, as we have determined that the affidavit constituted inadmissible hearsay and that the trial court's error in admitting it into evidence warrants a reversal, we need not consider the Defendant's constitutional argument.

necessary for a meaningful review of the trial court's sentencing decision. It is the defendant's duty to ensure that the appellate record contains all of the evidence relevant to the issues which are the basis of the appeal. See Tenn. R. App. P. 24(b). In the absence of an adequate record on appeal, this Court must presume the trial court's rulings were supported by the evidence. See State v. Gibson, 973 S.W.2d 231, 244 (Tenn. Crim. App. 1997); State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Furthermore, the presentence report reflects that the Defendant has an extensive criminal history, with many driving offenses including convictions for driving under the influence and driving on a revoked license. Therefore, this issue is without merit.

The judgment of the trial court is reversed and the case remanded for a new trial.

_____
DAVID H. WELLES, JUDGE