# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 19, 2010

## STATE OF TENNESSEE v. TOMMY L. WRAY

### Appeal from the Circuit Court for Marshall County
### No. 2008-CR-165      Robert Crigler, Judge

### No. M2009-01654-CCA-R3-CD - Filed June 8, 2010

Following a jury trial, the Defendant, Tommy L. Wray, was convicted of one count of aggravated burglary, a Class C felony, one count of sexual battery, a Class E felony, and one count of attempted sexual battery, a Class A misdemeanor. See Tenn. Code Ann. §§ 39-14-403(b), -13-505(c), -12-107(a). In this appeal, he contends that the trial court erred in denying his motion for a new trial due to the State's failure to provide him with a copy of a statement made by the victim. After our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Christopher Westmoreland, Shelbyville, Tennessee, for the appellant, Tommy L. Wray.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Charles Crawford, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee

# OPINION

## Factual Background

The events underlying this case began on October 22, 2008. The victim, B.I.,[1] testified that she was thirteen years old on that day. She lived at 828 Weaver Street in Lewisburg with her sixteen-year-old brother and her mother, Tammy Ross.

The victim testified that, at about 6:00 p.m. on October 22, Karen Edwards picked her up and drove her to the First Church of the Nazarene in Lewisburg. The victim often attended church with Ms. Edwards, whom she had known for about four years. The victim expected that she would be returned to her home after church and that her mother would be home at that time.

Church activities ended at about 9:00 p.m. Ms. Edwards drove the victim home. As they approached the victim's house, the victim noticed that her mother's car was not in the driveway. She saw an SUV in the driveway, but did not recognize it.

The victim exited Ms. Edwards' car and walked to her house's side door which was next to the driveway in which the SUV was parked. The victim tried to unlock the door, but her key got stuck. At that time, a woman exited the SUV and offered to help the victim open the house's side door. The woman introduced herself as Pam Cherry, and she claimed to be a friend of the victim's mother. The victim had never met her before. The victim also noted that her mother had never been absent before when the victim returned from church.

The victim successfully opened the side door and gave Ms. Cherry permission to use the bathroom inside. The victim closed the door after she and Ms. Cherry were inside. Ms. Cherry went into the bathroom. The victim poured a can of SpaghettiOs into a bowl and put the bowl into the microwave, setting the timer for ninety seconds. The victim noted that her brother was not home, and that she did not know where he was.

The victim then heard the house's side door open. She turned around and saw the Defendant entering the house while closing the door behind him. He had not knocked, and the victim had not seen him before or invited him inside. Shortly thereafter, Ms. Cherry exited the bathroom and began talking to the Defendant. The victim became scared because she had broken her mother's rule that she was not to let strangers into the house.

---

[1] It is the policy of this Court to refer to minor victims by their initials.

The victim could not remember the substance of the Defendant's and Ms. Cherry's conversation, but recalled that the Defendant touched Ms. Cherry "like trying to get down her pants just a little bit." Ms. Cherry said, "stop it, there is a little girl in this room." Ms. Cherry then exited the house through the side door, closing the door behind her.

The victim told the Defendant to leave because she was not allowed to have strangers in the house. The Defendant said, "it is all right, I just want to talk." The victim responded that she wanted to eat and that she did not think the Defendant should be there because her mom was not home. The Defendant sat down on a small glass table in the kitchen, near the victim, and continued to sip from a can of beer he had carried in from outside. He then told the victim that she "[had] a nice body." She ignored him. He then patted her on her buttocks. She became very frightened and, having retrieved her SpaghettiOs from the microwave, walked into the adjacent living room. She could not leave the house using the front door because it was blocked by a couch.

The victim sat down on a sectional couch in the living room and began to eat her dinner. The Defendant followed her and sat down next to her. After about one-and-a-half minutes, the victim heard Ms. Cherry's car's horn. The Defendant stood up and walked through the kitchen. He opened the side door, leaned about halfway out, and said "give me a few more minutes." The Defendant returned to the living room and sat back down on the couch. The victim noted that even though she was more scared than she had ever been in her life, she did not have a phone in the house and could not have called for help.

The Defendant asked the victim if she had had any boyfriends. She said she had. The Defendant asked if any boyfriend "[had] ever gotten in [her] pants," if she had ever taken her clothes off for a boyfriend, or if she had ever "Fd around" with a boyfriend. The victim responded in the negative. The Defendant then said he "was getting hard." The victim did not understand what he meant. The Defendant then "told [her] to look." She did so because she "didn't know what he was talking about." She looked down as directed and saw the Defendant's exposed penis sticking out of his pants a few inches away from her. She moved away.

The Defendant, still sitting down on the couch, told the victim to "feel it." She refused and said she "didn't want to." She became even more afraid, and "thought [she] was going to get hurt really bad." The Defendant grabbed the victim's hand and tried to put it on his penis; she was able to pull her hand away before he did so, however. The victim then heard Ms. Cherry's car's horn again. The Defendant stood up and left. The victim estimated that she had been in the house for a total of about forty-five minutes at that point, and that the Defendant had sat with her for most of that time.

The victim and other witnesses testified regarding: the relationship between Ms. Cherry and Ms. Ross, the victim's mother; Ms. Ross' whereabouts on October 22; the victim's procurement of police assistance and photo identification of the Defendant; and the Lewisburg Police Department's involvement with this case.

At the close of the State's proof, the Defendant chose to testify in his own defense. The Defendant admitted to entering the victim's home, telling her she had a "nice butt," patting her on the buttocks, and sitting with her in the living room. He said he had knocked on the door and entered the house only after the victim answered the door and invited him inside. After sitting on the couch with the victim for at least twenty minutes, he asked the victim, "if I were to do something, would it bother you." When the victim responded in the negative, the Defendant said that he exposed his penis to her. He said he did not try to force the victim to touch his penis, and did not intend to commit a felony, theft, or assault at the time he entered the victim's house.

The Defendant was convicted as charged. He now appeals.

**Analysis**

On appeal, the Defendant contends that the trial court erred in holding that he was not entitled to a new trial by virtue of the State's failure to provide him with a statement, made by the victim on October 22, 2008, that appeared in his presentence report:

> I came home from church & people were sitting in my driveway. They asked for my mom and I said she wasn't here. So I went inside, got me something to eat, and he walked in without knocking. He kept asking me if I drank or smoked anything and I said no, I'm not that type of girl. He then told me that I have a nice body and I got scared. He grabbed my butt, and I went into the living room to get away. He came in there and sat beside me. He kept getting closer. They beeped the horn and he went out there. 5 mins. later he came in again without knocking and said they were messing around in the car. He asked me if I wouldn't tell, and I was going to play along so nothing happened to me. Then he asked me if I had a boyfriend and I said I just broke up with him. So he kept on asking me if we played with each other while we were going out. She said no. I am not that way. He asked about 10 times. Then he said that he was getting hard, and I didn't know what he meant so he pulled it out and said look. I didn't know what he meant by that neither, so I looked, then I turned around as fast as possible. Then he told me to touch it, and I said no, he asked me about 10 times, I kept saying no. Then they beeped the horn again and he left.

In Brady v. Maryland, 373 U.S. 83 (1963), the United States Supreme Court established the prosecution's duty to furnish the accused with exculpatory evidence upon request by the defense. Id. at 87. Any "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. The duty to disclose exculpatory evidence extends to all "favorable information" irrespective of whether the evidence is admissible at trial. Johnson v. State, 38 S.W.3d 52, 56 (Tenn. 2001). "Favorable information" includes evidence that could be used to impeach the State's witnesses. Id. at 55-56 (citations omitted). While Brady does not require the State to investigate for the defendant, it does burden the prosecution with the responsibility of disclosing statements of witnesses favorable to the defense. State v. Reynolds, 671 S.W.2d 854, 856 (Tenn. Crim. App. 1984).

In order to establish a due process violation under Brady, a defendant must demonstrate the following:

(1) The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);

(2) The State must have suppressed the information;

(3) The information must have been favorable to the accused; and

(4) The information must have been material.

State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995). In order to establish that exculpatory evidence is "material," a defendant must show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435 (1995); see also Edgin, 902 S.W.2d at 390. There must be a "'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Edgin, 902 S.W.2d at 390 (quoting Kyles, 514 U.S. at 435).

The Defendant argues that the victim's undisclosed statement could have been used to impeach her because "[i]n the trial the victim . . . testified that she never approached the vehicle in the driveway, but her written statement was different. Her written statement never mentions admitting Ms. Cherry into the house, but in trial she went into great detail on this issue."

We disagree that the victim's undisclosed statement says that she "approached the vehicle in the driveway," although it does differ from her trial testimony in that the victim admits that she saw people in the SUV upon first approaching her house. It is true that the victim's undisclosed statement does not mention Ms. Cherry entering the house. We also note that the victim's statement does not mention any attempt by the Defendant to force her to touch his penis.

The trial court found that there was no reasonable probability that, had the statement been disclosed to the defense, the result of the trial would have been different. The trial court also found that the statement was not "exculpatory evidence." The Defendant admitted to touching the victim's buttocks and exposing his penis; at trial, the Defendant only contended that he entered the victim's house with her permission and that he did not grab her hand. After our review of the record, we cannot conclude that the undisclosed statement, in which the victim failed to mention Ms. Cherry or the Defendant's attempt to force her to touch his penis would have significantly damaged her credibility. The Defendant has not established a reasonable probability that disclosure of the victim's statement would have changed the result of his trial. Edgin, 902 S.W.2d at 390. Because the information was not material, the Defendant cannot establish a Brady violation. Id. at 389. The Defendant is not entitled to relief on this issue.

**Conclusion**

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
DAVID H. WELLES, JUDGE

-6-