IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 5, 2002

## STATE OF TENNESSEE v. BETSY F. SPEER

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-11751     Bernie Weinman, Judge**

_____

**No. W2001-02212-CCA-R3-CD  - Filed June 4, 2003**

_____

The appellant, Betsy F. Speer, was convicted by a jury in the Shelby County Criminal Court of driving under the influence. The appellant subsequently acknowledged that she was guilty of driving under the influence, second offense. The trial court sentenced the appellant to the mandatory forty-five days in jail, followed by a probationary period of ten months and fourteen days. The trial court also revoked the appellant's driver's license for a period of two years and imposed a seven hundred fifty dollar ($750) fine. On appeal, the appellant contends that the State failed to comply with her Rule 16 motion for discovery. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Leslie I. Ballin, Memphis, Tennessee, for the appellant, Betsy F. Speer.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; William L. Gibbons, District Attorney General; and Camille McMullen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I.  Factual Background**

At trial, Memphis Police Officer Tom Stanley testified that on November 6, 1999, he was called to the scene of a one-vehicle accident on White Station Road. He explained that at the point where the accident occurred, the road makes a sharp "S" curve, which is marked by hazard lights warning drivers to maintain a speed of twenty-five miles per hour (25 m.p.h.). Officer Stanley observed that "[t]he vehicle had run off [the road] and struck a house in the 300 block of Whitestation [sic]." Officer Stanley also observed a utility pole leaning to the side. Officer Stanley testified that, based upon the vehicle's location and the damage to the house, it was obvious that the

vehicle had struck the pole. Officer Stanley's inspection of the vehicle revealed that the "front, right fender was badly damaged" and the front and rear windshields were broken.

Officer Stanley testified that no one was inside the vehicle when he arrived. The driver, later identified as the appellant, was being treated in an ambulance that had arrived earlier. Although Officer Stanley determined that the appellant was the owner of the vehicle, he had no contact with her. On cross-examination, Officer Stanley conceded that he never saw anyone driving the vehicle.

At approximately 1:30 a.m. on November 6, 1999, Officer Patrick Siano of the Shelby County Sheriff's Department Metro DUI Unit responded to a dispatch regarding an accident on White Station Road and was the first officer to arrive at the scene. Upon arrival, Officer Siano observed a vehicle in the yard of a residence and also observed a leaning utility pole. The appellant was being treated in an ambulance at the scene. Officer Siano "immediately went to the ambulance to check the status of [the appellant]." He related that as a Metro DUI officer, it was his duty to speak with the appellant to determine whether she was under the influence of an intoxicant. When he stepped into the ambulance, Officer Siano smelled the strong odor of an intoxicant and observed that the appellant's eyes were bloodshot. Officer Siano spoke briefly with the appellant, asking her what had happened. The appellant responded, "I don't know." Officer Siano then stepped out of the ambulance and waited for the paramedics to release the appellant.

Upon the appellant's release, Officer Siano approached the appellant and asked her to perform a series of field sobriety tests. The appellant agreed and followed Officer Siano to the front of his patrol car, in which was mounted a video camera to be used in recording the tests. Following Officer Siano's testimony regarding the appellant's performance on the field sobriety tests, the videotape of the tests was entered into evidence and played for the jury. Officer Siano testified that the video was a "fair and accurate depiction of the events that [he] described."

In a jury-out hearing, counsel for the appellant informed the court that the videotape provided to the defense was approximately thirteen minutes shorter than the videotape played for the jury. The State claimed that the failure to provide the defense with a complete copy of the videotape was inadvertent and asserted that the additional footage was neither inculpatory nor exculpatory. Nevertheless, the appellant requested that her case be dismissed. The trial court refused, finding that

> the defense did obtain, in the Court's opinion, the most important part
> of the tape, and it's been indicated it would not [a]ffect the outcome
> of the trial. So there was certainly error in not giving the whole tape.
> But I think at this point it would certainly be harmless error.

Thereafter, the jury returned to the courtroom and the State resumed the questioning of Officer Siano.

Officer Siano testified that the appellant first performed the "one-legged stand," in which she was required to hold her hands down to her sides, raise one leg approximately six inches out in front of her, and look at the tip of her toe. The appellant was instructed to hold this position

for thirty seconds. After ten to twelve seconds, the appellant put her foot on the ground, pulled it back up, then reached and grabbed Officer Siano. Officer Siano concluded that the appellant was unable to perform the test.

The appellant was then asked to perform the "heel-to-toe walk," which required her to place her right foot in front of her left foot, touching the right heel to the left toe. Officer Siano instructed the appellant to stand in this position while he explained the remainder of the test to her. Officer Siano directed the appellant to "walk out [nine] steps touching heel-to-toe on every . . . step." After completing the nine steps, Officer Siano told the appellant to turn on her left foot and walk back toward the patrol car, taking nine "heel-to-toe" steps. As the appellant walked "heel-to-toe," she stepped "off line" and took eleven steps instead of nine. Officer Siano stated that, although the appellant completed the test, she had performed poorly.

Following these two tests, Officer Siano placed the appellant in the backseat of his patrol car and positioned the video camera to record the appellant's behavior during the remainder of the testing. Officer Siano related at trial that the strong odor of an intoxicant remained throughout the testing and that the appellant's eyes were bloodshot and her speech slurred. Officer Siano testified that while in the patrol car, he advised the appellant that she was under arrest for DUI, asked if she would be willing to take a breathalyzer test, and advised her of the consequences of not taking the test. The appellant responded that she wanted to call "somebody," but Officer Siano advised her that she did not have the right to have another individual present while taking the breathalyzer test. Officer Siano testified that "at some point," the appellant began crying and that she refused to take the breathalyzer test without first calling "somebody."

On cross-examination, Officer Siano conceded that he did not see the appellant driving the vehicle. He also acknowledged that other conditions, such as age, illness, or nervousness, may affect an individual's ability to perform the field sobriety tests. However, Officer Siano testified that the appellant informed him that she had consumed alcohol that evening and that at the time of the accident she was driving the vehicle. The appellant also denied having any medical problems and did not indicate that she was nervous.

At trial, Harriet Irene Smith testified on behalf of the appellant. Smith related that she and the appellant had been friends for eight or nine years. On November 5, 1999, at approximately 8:30 p.m., Smith met the appellant at The Half Shell Restaurant for drinks. According to Smith, she drank two vodka tonics, the appellant drank two glasses of Chardonnay, and the women shared an appetizer.

At 9:30 p.m., Smith and the appellant decided to go to Patrick's Bar and Grill to listen to a live band. The appellant rode to Patrick's in Smith's vehicle, leaving her own vehicle at The Half Shell. Smith testified that while at Patrick's, she had another vodka tonic and the appellant "probably" had another glass of Chardonnay. However, Smith related that she never saw the appellant drinking the additional glass of wine. At 12:30 a.m., the women left Patrick's and returned to the parking lot at The Half Shell. After visiting for a few more minutes, the appellant got into her

own vehicle and left. Smith testified that she did not consider the appellant to be too impaired to drive.

When Smith arrived home, the telephone was ringing. Smith testified that the appellant was calling to tell her that she had been in an accident. Smith drove to the scene of the accident where she found the appellant being treated in an ambulance. Smith testified that after being treated, the appellant followed Officer Siano to his patrol car to perform field sobriety tests. Officer Siano subsequently informed Smith to go home because he was "tak[ing] [the appellant] downtown."

The appellant's testimony of the events leading up to the accident mirrored that of Smith. The appellant confirmed that she consumed a third glass of wine at Patrick's. She further testified that after leaving The Half Shell parking lot at approximately 12:45 a.m.,

I was head[ed] down Whitestation [sic], and there was a huge pop and a flash of light that completely blinded my windshield. When it happened, it scared me so much that I ducked to the left. I don't know what happened then, but the next thing I know I am in the front yard, and my car has crashed into a home.

The appellant testified that someone called 911 and shortly thereafter an ambulance arrived. After being treated, the appellant got out of the ambulance and discovered Officer Siano waiting to escort her to his patrol car to perform field sobriety tests. The appellant described the scene as "dark, but lights were flashing everywhere. . . . It was very distracting and very, very upsetting." Upon completing the tests, the appellant realized that she had not performed well. She related that her poor performance was due to being extremely frightened and nervous and "being accused of something that was not true."

After some time had passed, the appellant asked to repeat the tests. Officer Siano refused to allow her to retake the "one-legged" and "heel-to-toe" tests, but asked the appellant to take the breathalyzer test. The appellant testified that she agreed to take the breathalyzer test if Officer Siano would first allow her to call someone. Officer Siano refused. At the conclusion of her testimony, the appellant maintained that, although she had consumed three glasses of wine that evening, her ability to drive was not impaired by alcohol.

Based upon the foregoing testimony, the jury convicted the appellant of driving under the influence. The appellant subsequently acknowledged that she was guilty of driving under the influence, second offense. The trial court sentenced the appellant to the mandatory forty-five days in jail, followed by a probationary period of ten months and fourteen days. Additionally, the trial court revoked the appellant's driver's license for a period of two years and imposed a seven hundred fifty dollar ($750) fine. This appeal followed.

## II. Analysis

-4-

On appeal, the appellant argues that by providing her with a copy of the videotape of the field sobriety tests that was thirteen minutes shorter in length than the videotape introduced at trial, the State failed to comply with her Rule 16 motion for discovery.[1] The appellant asserts that the State's failure to comply constitutes reversible error. The State claims that the appellant waived this issue because she failed to provide appropriate references to the record as required by Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure. The State also contends that the thirteen minutes inadvertently omitted from the defense copy "were so irrelevant to any material fact [that] the trial court was within its discretion in refusing to declare a mistrial."

We first address the State's contention that the appellant "waived her argument for failure to write a proper brief." See Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b). In support of its contention, the State refers this court to the argument portion of the appellant's brief, in which the appellant stated that "the State provided the [appellant] with a videotape that was approximately thirteen minutes shorter than the videotape that was played for the jury during trial." Following this statement, the appellant cited pages 38, 53, and 54 of volume 2 of the record where the two copies of the videotape were entered into evidence.[2] The State correctly asserts that these citations do not allow this court to "ascertain which portions of tape were omitted from [the appellant's] copy."

However, in the next paragraph of her brief, the appellant asserted that "[t]he tape provided to the defense was approximately thirteen minutes shorter than the tape used by the prosecution at trial." The appellant thereafter referred this court to volume 4, page 81 of the record, which reflects that the appellant's copy of the videotape ended at 2:16:54 a.m. The following page reflects that the State's copy ended at 2:30:27 a.m., approximately thirteen minutes after the appellant's copy. We find this reference to the record to be sufficient and conclude that the appellant has not waived her argument on appeal.

> Rule 16(a)(1)(C) of the Tennessee Rules of Criminal Procedure provides that [u]pon request of the defendant, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the state, and which are material to the preparation of the defendant's defense or are intended for use by the state as evidence in chief at the trial, or were obtained from or belong to the defendant.

---

[1] The technical record does not contain a Rule 16 motion for discovery filed by the appellant and the record does not reflect that the trial court ruled upon a motion for discovery. However, at trial, counsel for the appellant stated that he had filed a motion for discovery on December 7, 2000. In any event, the State provided the appellant with a copy of the videotape; therefore, we will address the issue on the merits.

[2] Volume 2 of the appellate record consists of the videotapes entered into evidence at trial. We have determined that the appellant intended to refer this court to volume 4 of the appellate record, the trial transcript, where, on pages 38, 53, and 54, the videotapes were introduced into evidence.

If the State fails to comply with this rule, the trial court has the discretion to fashion an appropriate remedy, including granting a continuance or prohibiting the introduction of the evidence. Tenn. R. Crim. P. 16(d)(2). This court has previously observed that excluding the evidence is a drastic remedy which should not be implemented absent a showing that the defendant was prejudiced by the State's failure to comply with discovery and the prejudice cannot otherwise be eradicated. State v. James, 688 S.W.2d 463, 466 (Tenn. Crim. App. 1984); see also State v. Smith, 926 S.W.2d 267, 270 (Tenn. Crim. App. 1995).

Upon discovering that her copy of the videotape was shorter in length than the videotape played at trial, the appellant did not request that the evidence be excluded, but instead asked the trial court to dismiss her case. Clearly, dismissal of the case would be even more drastic than exclusion of the evidence, thereby requiring the appellant to establish that she was prejudiced by the extra footage of videotape. See State v. Israel Michua Camacho, No. E2001-00554-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 649, at *12 (Knoxville, Aug. 2, 2002).

In the instant case, the appellant has not established that she was prejudiced by the State's failure to supply her with a complete copy of the videotape. In fact, at the jury-out hearing on the matter, the appellant's counsel stated, "[I]n my listening and viewing the complete tape today, there's nothing that would have changed my trial strategy up until this point nor would it have affected [the appellant's] decision to go to trial." Accordingly, we conclude, as did the trial court, that any error in the State's failure to provide the appellant with a complete copy of the videotape was harmless. Tenn. R. Crim. P. 52(a).

The appellant also contends that by not being provided with a complete copy of the videotape, she was denied due process of law. In Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963), the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." In order to obtain relief because of a Brady violation, the appellant must show that
> (1) the State suppressed the evidence;
> (2) the evidence was favorable to the accused;
> (3) the evidence was material; and
> (4) the defendant made a proper request for the evidence, unless the
> evidence, when viewed by the prosecution, is obviously exculpatory
> in nature, in which case the State is required to disclose the evidence.

State v. Spurlock, 874 S.W.2d 602, 609 (Tenn. Crim. App. 1993); see also Johnson v. State, 38 S.W.3d 52, 56 (Tenn. 2001). Clearly, the appellant requested and was provided with a copy of the videotape. However, the copy provided to the appellant was incomplete.

Nevertheless, we are unable to conclude that the omitted portion of the videotape was either favorable to the appellant's defense or material. "Evidence is favorable to an accused where it exculpates the accused, mitigates the punishment, or impeaches the prosecution's witnesses." Sample v. State, 82 S.W.3d 267, 270 (Tenn. 2002). Both copies of the videotape show the appellant,

clearly intoxicated, sitting in the backseat of Officer Siano's patrol car. During the additional thirteen minutes of the State's videotape, the appellant asked to call her daughter or a friend; asked Officer Siano to tell Smith, who had come to the scene of the accident, to go home; asked Officer Siano what was going to happen to her; and refused to take the breathalyzer test without first being allowed to call someone. None of this additional evidence exculpated the appellant. Thus, the appellant has failed to demonstrate that the additional footage was favorable to her.

We also conclude that the appellant has failed to demonstrate that the additional footage was material. "Evidence is deemed to be material when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Johnson, 38 S.W.3d at 58 (quoting State v. Edgin, 902 S.W.2d 387, 390 Tenn. 1995)). "'The question is not whether the [appellant] would more likely than not have received a different verdict with the evidence, but whether in its absence [she] received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" Edgin, 902 S.W.2d at 390 (quoting Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 1566 (1995)). The appellant has not demonstrated that in the absence of the additional thirteen minutes of videotape, she was denied a fair trial. As previously noted, at trial, counsel for the appellant admitted that the additional footage would not have affected his trial strategy. Moreover, the additional footage was not exculpatory in nature. Accordingly, we conclude that there is no reasonable probability that had the omitted portion of the videotape been disclosed to the appellant during discovery, the result of the proceeding would have been different. This issue is without merit.

### III. Conclusion
Finding no error, we affirm the judgment of the trial court.

 

 

 

_____
NORMA McGEE OGLE, JUDGE