IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 3, 2003

## STATE OF TENNESSEE v. DEDRICK DEWAYNE CHISM

**Appeal from the Circuit Court for Henry County**
**No. 13316      Julian P. Guinn, Judge**

—————————

**No. W2002-01887-CCA-R3-CD  - Filed December 23, 2003**

—————————

A Henry County Circuit Court jury convicted the defendant, Dedrick Dewayne Chism, of two counts of selling more than one-half gram of cocaine, a Class B felony, and the trial court sentenced him as a Range II, multiple offender to twelve years for each conviction to be served concurrently.  The defendant appeals, claiming that (1) the evidence is insufficient to support his convictions, (2) the state improperly withheld an exculpatory witness's name from the defense, and (3) the trial court erred by refusing to allow the defense to impeach a state witness with his prior conviction and bad acts.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined.  DAVID G. HAYES, J., not participating.

Barton F. Robison, Paris, Tennessee, for the appellant, Dedrick Dewayne Chism.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; G. Robert Radford, District Attorney General; and Steven L. Garrett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the defendant's selling crack cocaine to an undercover informant in 2001. Sylvester Island testified that in the spring of 2001, he was an undercover informant for the Twenty-Fourth Judicial District Drug Task Force and worked with Agent Mark Anderson on drug purchases. He said that he met the defendant in January 2001 and that they became friends. He said that the defendant owned a car detail shop and that he began visiting the shop to drink beer with the defendant and other people. He said that on March 21, 2001, the defendant went to Memphis to buy drugs. He said he telephoned Agent Anderson and told him about the defendant's drug buy. He said that he and Agent Anderson met at a cemetery, that Agent Anderson searched his car and his person, and that Agent Anderson installed video equipment in his car. He said that Agent Anderson gave

him two hundred dollars to buy drugs and that he went to the defendant's shop. He said that he told the defendant what he wanted, that the defendant gave him three large crack cocaine rocks, and that he gave the defendant two hundred dollars. He said he returned to the cemetery and met Agent Anderson. The state showed Island a plastic bag containing three crack rocks and he identified them as the drugs he bought from the defendant on March 21.

Island testified that on April 12, the defendant told him that the defendant was going to Memphis to purchase more drugs. He said he telephoned Agent Anderson and met with him on April 13 at the cemetery. He said Agent Anderson searched him and his car and installed a video camera in the car. He said he went to the detail shop and bought one hundred dollars worth of crack cocaine from the defendant. He said that he and Agent Anderson met back at the cemetery and that when Agent Anderson checked the video camera, they discovered that it had not been working. The state showed Island a second plastic bag containing crack cocaine, and he identified it as the cocaine he bought from the defendant on April 13. He said the task force paid him one hundred dollars every time he made an undercover drug buy.

On cross-examination, Island testified that during the second drug buy, a man named Robert was cleaning cars at the defendant's shop. He acknowledged that at a preliminary hearing in an unrelated drug case, he testified that he reported to Agents Lester McCaleb and Mark Anderson when in fact Agent McCaleb had died seven weeks earlier. He said he also got paid one hundred dollars every time he testified in a case.

Mark Eric Dunlap, a forensic scientist with the Tennessee Bureau of Investigation (TBI), testified that he performed analysis on two bags of evidence received in the TBI laboratory. He said that the substance in the first bag was four grams of cocaine and that the substance in the second bag was 1.6 grams of cocaine.

Agent Mark Anderson of the Twenty-Fourth Judicial District Drug Task Force testified that in the spring of 2001, he was conducting an undercover drug operation and using Sylvester Island as an informant. He said that on March 21, 2001, he and Island met at a cemetery and that he did a pat-down of Island's person and searched his car. He said he installed video equipment in the trunk and gave Island two hundred dollars in order to buy drugs. He said that Island also was wearing a body wire, that the wire transmitted to a radio in Agent Anderson's car, and that he stayed within "ear distance" of Island at all times. He said that Island was gone for about forty-five minutes and that Island returned to the cemetery and gave him crack cocaine. He said that they put the cocaine in a plastic bag and that both initialed the bag. He said that he searched Island and Island's car again and that he paid Island one hundred dollars. He said that this same set of events happened again on April 13. He said that the surveillance equipment malfunctioned during both of Island's drug buys. He said, though, that Island had participated in sixty-two other drug cases and had worked as an informant for other state and federal agencies and that he had no reason to doubt Island's credibility.

On cross-examination, Agent Anderson testified that an affidavit he signed alleged that Island bought one-half gram of cocaine from the defendant on March 21 when the amount was actually four grams. He said he could not explain the discrepancy in the amounts other than he made a mistake. He said that he tried to audio- and videotape all drug buys but that the equipment malfunctioned in this case. He said that he did not see Island purchase drugs from the defendant and that the only evidence tying the defendant to this case was Island's testimony. He acknowledged that in his police report, he stated that both of the drug buys were captured on audio- and videotape. He said that the Friday before trial, he gave the defense Robert Williams' full name. He said he could not give the defense Mr. Williams' address and phone number because he did not know them. He said that Island would be paid one hundred dollars for testifying against the defendant.

The jury convicted the defendant of two counts of selling a Schedule II controlled substance. The defendant appeals, claiming that the evidence is insufficient, that the state violated Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), and that the trial court erred by refusing to allow the defense to cross-examine Sylvester Island about his prior conviction and bad acts. We note that within these issues, the defendant raises many other claims, including (1) that his constitutional rights were violated because the state failed to tape record witnesses' grand jury testimony; (2) that Agent Anderson improperly testified in front of the grand jury that audio and video surveillance captured Sylvester Island buying drugs from the defendant when no such evidence existed; and (3) that the state committed various acts of prosecutorial misconduct. However, none of these issues was included in the defendant's motion for new trial and are waived. See T.R.A.P. 3(e). Moreover, given that the argument section of the defendant's brief makes mostly conclusory and tangential allegations with little to no citation to the record or authorities, we discern no plain error. See Tenn. R. Crim. P. 52(b). We will now focus our analysis only on the issues that are properly before us.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant claims that the evidence is insufficient to support his convictions because the only evidence tying him to the crimes was Sylvester Island's testimony. He argues that Island was a co-conspirator and, therefore, his convictions cannot stand because a conviction may not be based upon the uncorroborated testimony of an accomplice. See State v. Allen, 976 S.W.2d 661, 666 (Tenn. Crim. App. 1997) (holding that the testimony of one accomplice may not corroborate the testimony of another accomplice). In addition, he claims that the evidence against him is highly suspect for several reasons, including the fact that the audio and video equipment failed during both drug buys and that the TBI results and Agent Anderson's police report for the March 21 drug buy show a large discrepancy in the amount of cocaine. The state claims that the evidence is sufficient. We agree with the state.

The defendant's main contention regarding his sufficiency of the evidence claim is that the convictions cannot stand because Sylvester Island was a co-conspirator. However, neither the state nor the defense presented any evidence that Island was an accomplice in this case. See State v. Perkinson, 867 S.W.2d 1, 7 (Tenn. Crim. App. 1992) (stating that a common test for determining whether a witness is an accomplice is whether the witness could have been indicted for the offense

along with the accused).  To the contrary, Island and Agent Anderson testified that Island was an undercover agent working for the Twenty-Fourth Judicial District Drug Task Force.  Island testified that he befriended the defendant and that when he learned the defendant had gone to Memphis to buy drugs, he contacted Agent Anderson.  He said that he and Agent Anderson set up two drug buys, that he purchased crack cocaine from the defendant, and that he turned over the cocaine to Agent Anderson.  Obviously, he was not a co-conspirator in this case.

Moreover, the defendant was not convicted based upon Island's testimony alone.  Agent Anderson testified that Island told him the defendant was making trips to Memphis in order to purchase drugs, that he and Island met at a cemetery and set up two drug buys from the defendant, that he searched Island and Island's car before each buy, that he gave Island money to purchase the drugs, that Island left the cemetery to buy drugs from the defendant, and that Island returned from both buys with crack cocaine.  He also testified that Island had participated in sixty-two other drug cases and that he had no reason to doubt Island's credibility. Although he did not see Island purchase drugs from the defendant, we believe the jury could infer from his testimony that Island went to the defendant's auto detail shop and bought crack cocaine from the defendant.  The defendant's argument relates to Island's credibility, a matter reserved for the trier of fact and not this court.  See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

As to the defendant's claim that the evidence in this case is highly suspect, the defense cross-examined Agent Anderson about the fact that the surveillance equipment malfunctioned during the drug buys and that his police report was inconsistent with the TBI report.  Nevertheless, the jury chose to convict the defendant of two counts of selling a Schedule II controlled substance.  Taken in the light most favorable to the state, the evidence is sufficient to support the defendant's convictions.

## II. EXCULPATORY EVIDENCE

The defendant claims that the state violated Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), by failing to reveal the name of a potentially exonerating witness until the Friday before trial. He argues that this "unknown and unavailable witness could have offered testimony to completely exculpate" him.  The state claims that the defendant cannot prevail in his claim because the defendant has failed to show that the state suppressed the witness's name or that the witness could have offered testimony helpful to the defendant.  We agree with the state.

At the defendant's motion for a new trial hearing, the defense stated the following:

> Your Honor one thing I would like to bring to the Court's attention . . . there was a potential witness in this case which we repeatedly asked the State to identify.  They finally -- we thought we knew who it was.  When they finally identified him late Friday afternoon before the trial on Monday they gave us a different name and we were unable to reach that person.  What he might have said or

not said we have no way of knowing but we have not talked to him. We feel our defense was compromised in not being able to talk to this man. We had talked to who we thought it would be and we thought it would make a difference.

The trial court asked the defense how the witness could have helped the defendant, and the defense stated that the witness may have disputed Sylvester Island's testimony. The trial court denied the defendant's motion for a new trial.

In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S. Ct. at 1196-97. In order to establish a due process violation under Brady, four prerequisites must be met:

> 1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information, whether requested or not);
>
> 2. The State must have suppressed the information;
>
> 3. The information must have been favorable to the accused; and
>
> 4. The information must have been material.

State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995). The burden of proving a Brady violation rests with the defendant, and the violation must be proven by a preponderance of the evidence. Id.

Initially, we note that a Brady violation is not implicated here because this is not a situation in which the state completely failed to disclose the witness's name. See State v. Caughron, 855 S.W.2d 526, 548 (Tenn. 1993) (stating that while a "complete non-disclosure of significant exculpatory evidence often makes an easy case for a due process violation, delayed disclosure requires an inquiry into whether the delay prevented the defense from using the disclosed material effectively in preparing and presenting the defendant's case"). Instead, the defense learned of the witness the Friday before trial. Nothing in the record indicates that the defense asked the trial court for a continuance in order to locate and interview the witness. See T.R.A.P. 36(a) (providing that relief is not required for a party who failed to take reasonably available action to prevent or nullify an error). Moreover, the defendant presented no evidence at the motion for new trial hearing or claims of such evidence on appeal that the witness's testimony would have been favorable to him or that the result of his trial would have been different had he been provided with the witness's name earlier. We conclude that the defendant cannot prevail on this claim.

# III.  SYLVESTER ISLAND'S PRIOR CONVICTION AND BAD ACTS

Finally, the defendant argues that the trial court erred by refusing to allow him to impeach Sylvester Island with Island's 1983 conviction for stealing cattle and 1987 charges for selling a Schedule VI controlled substance and misrepresenting a substance to be a controlled substance, both of which were later dismissed by nolle prosequi.  The state claims that the trial court properly excluded evidence of the conviction and charges because they were more than ten years old.  We agree with the state.

Before trial, the state filed three motions in limine.  The first motion asked that the trial court prohibit the defense from questioning Island about his 1983 conviction for stealing livestock pursuant to Rule 609, Tenn. R. Evid.  In the second and third motions, the state asked that the trial court prohibit the defense from questioning Island about his being charged in 1987 with selling a Schedule VI controlled substance and misrepresenting a substance to be a controlled substance pursuant to Rule 608, Tenn. R. Evid.  In all three motions, the state argued that the evidence was inadmissible because the conviction and charges were more than ten years old and because their probative value did not outweigh their prejudicial effect.  The trial court, with little explanation, granted the state's motions.

Specific instances of conduct may be used to impeach a witness during cross-examination if the conduct is probative of the witness's character for truthfulness or untruthfulness.  Tenn. R. Evid. 608(b).  Before a witness can be questioned about the specific instance of conduct, the court, upon request, must hold a jury-out hearing "to determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry."  Tenn. R. Evid. 608(b)(1).  In addition, the conduct

> must have occurred no more than ten years before commencement of the action or prosecution, but the evidence of a specific instance of conduct not qualifying under this paragraph . . . is admissible if the proponent gives to the adverse party sufficient advance notice of intent to use such evidence . . . and the court determines in the interests of justice that the probative value of that evidence, supported by specific facts and circumstances, substantially outweighs its prejudicial effect . . . .

Pursuant to the conditions and procedures set forth in Rule 609, Tenn. R. Evid., the credibility of a witness may be attacked by presenting evidence of prior convictions if certain conditions are met.  First, the witness must be asked about the convictions on cross-examination.  Tenn. R. Evid. 609(a)(1).  In addition, the convictions must be punishable by death or imprisonment over one year or must involve a crime of dishonesty or false statement.  Tenn. R. Evid. 609(a)(2).  Finally, less than ten years must have elapsed between the witness's release from confinement for the prior conviction and the commencing of the prosecution.  Tenn. R. Evid. 609(b).  However, a prior conviction outside the ten-year time period may still be used to impeach the witness if the

proponent gives the adverse party sufficient notice of the proponent's intent to use such evidence and the trial court determines that the probative value of the evidence substantially outweighs any prejudicial effect. Id. A trial court's ruling under Rule 609 will not be reversed absent an abuse of discretion. See Johnson v. State, 596 S.W.2d 97, 104 (Tenn. Crim. App. 1979).

In 1983, Island was convicted of stealing livestock and sentenced to five years in confinement. In 1987, he was charged with selling a Schedule VI controlled substance and misrepresenting a substance to be a controlled substance. In 1988, both of the charges were dismissed by nolle prosequi. As pointed out by the state, the conviction and charges fell outside the ten-year time limit provided in Rules 608 and 609, Tenn. R. Evid. Moreover, inherent within the trial court's ruling that the evidence is inadmissible was the trial court's determination that the probative value of the conviction and charged offenses did not substantially outweigh their prejudicial effect. "The underlying theory [behind the ten-year rule] is that a person's criminal deeds long ago may have little bearing on the person's credibility today. The individual may have matured considerably and learned from the experiences engendered by the conviction." Neil P. Cohen et al., Tennessee Law of Evidence § 6.09[6][a] (4th ed. 2000). We conclude that the trial court did not abuse its discretion by ruling that the defense could not question Sylvester Island regarding the prior conviction and charged offenses.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

 

 

_____
JOSEPH M. TIPTON, JUDGE