# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 10, 2004

## STATE OF TENNESSEE v. LENZO SHERRON aka SALAAM SHABAZZ

**Direct Appeal from the Circuit Court for Dyer County**
**No. C02-393     Lee Moore, Judge**

---

**No. W2003-01222-CCA-R3-CD  - Filed March 15, 2004**

---

The defendant was convicted of aggravated robbery, a Class B felony, and sentenced to ten years as a standard offender.  The defendant has filed a *pro se* appeal of right of his conviction, posing the following issues for our review:

1) Whether the evidence was sufficient beyond a reasonable doubt to support the defendant's conviction for aggravated robbery;
2) Whether the State improperly withheld exculpatory and impeachment evidence; and
3) Whether the trial court failed to investigate a conflict of interest before appointing new counsel.

After careful review, we affirm the conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOE G. RILEY and ROBERT W. WEDEMEYER, JJ., joined.

Lenzo Sherron aka Salaam Shabazz, Tiptonville, Tennessee, *Pro Se.*

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

## OPINION

Mary Ann Prince was working at Wilson's Mini-Mart in Dyersburg on the night of September 29, 2002, when a man armed with a shotgun entered the store at approximately 10:45 p.m.  His face was wrapped in a scarf, and he was wearing a blue jacket, blue pants, gloves, sunglasses, and a white visor.  The man demanded money from Ms. Prince and her co-worker, Sadie Jackson.  The money from the cash register, as well as a First Citizens bag containing money, were placed in a Wal-Mart sack presented by the man.  The two clerks were taken to a back room and told

to stay there. The man then removed the phone handset and took it as he left the store. Ms. Prince activated an alarm button and called 911 from a cordless phone.

Mike Dovice, a member of the Dyersburg Police Department, was the first officer to respond and was later joined by other officers, including Investigator Chris Hamm. After taking a description of the robber, Officer Dovice began a search in the area around the store. He found a .410 shotgun and a Wal-Mart sack containing money and gloves, all behind an air-conditioning unit for a church located adjacent to the store. Underneath the Wal-Mart sack, he found a two-way paging device.

Inside an air-conditioning unit behind the Mini-Mart, Officer Dovice discovered a blue jacket containing four .410 shotgun shells. Inside an outbuilding of the Mini-Mart, he found blue jogging pants and the phone handset taken from the store.

Later, Officers Dovice and Hamm examined the pager and located the signature page which contained the words, "Lil Sparky." This was compared with a database of nicknames and street names which the police department maintained. "Sparky" matched the name of Lenzo Sherron, the defendant.

Mary Ann Prince lived across the street from the Mini-Mart. She said that later that evening, "[a]round about one, little after," she was sitting on her porch with her friend Marissa Andrews. Ms. Prince stated she saw a man riding a bicycle in the area of the store. She described him as a "[k]inda small-framed black guy with a white sun visor, gray sweatshirt and jeans." She stated that the man laid his bicycle down between the Mini-Mart and Ketchum's and appeared to be "[l]ooking for stuff." After the man left, Ms. Prince placed a call to 911 to report the sighting.

Officer Dovice returned to the Mini-Mart and took a description of the bicyclist. He also went to the area where he had found the items recovered and there he saw bicycle prints in the dew. On cross-examination, he admitted he did not see any footprints in the area. He stated that Ms. Prince and Ms. Andrews described the bicyclist as wearing a white sun visor and a gray t-shirt with a colored design on the front. While speaking with the women, Dovice was notified of the defendant's apprehension at the intersection of Reynolds and Barney. When Dovice went to that location, he stated that the defendant was wearing a gray sweatshirt with a Mickey Mouse emblem on the front and had been riding on a bicycle.

Deanna Yancy, a dispatcher for the Dyersburg Police Department, was on her way to work for the 11:00 p.m to 7:00 a.m. shift on September 29th. At the intersection of Shelby and KW Streets, she saw a black male wearing a gray sweatshirt and riding a chrome-colored bicycle. She stated that he was riding fast and looking back.

After the robbery, Marissa Andrews was sitting with her friend, Mary Ann Prince, on the porch of the Prince home across the street from the Mini-Mart. At sometime after midnight, she saw a man wearing a gray sweatshirt with "something on the front" and a white visor, riding a bicycle. Ms. Andrews witnessed "the guy on the bike go back around towards the back of the store and lay

his bike down and start scrounging and looking for something." After the man left, the women reported their sighting to 911.

Chris Hamm, a member of the Dyersburg Criminal Investigation Department, responded to the robbery alarm issued at the Mini-Mart. He viewed the security camera tape but was unable to see the offender's face due to its covering. Officer Dovice notified Hamm of evidence discovered outside. Hamm stated that behind the air-conditioning unit at East Dyersburg Methodist Church, there was a shotgun, a pair of white work gloves, a Wal-Mart sack containing money, a green money bag, two .410 shotgun shells, and a two-way pager. The pager was without a battery cover. He also described finding the name "Lil Sparky" on the pager display and matching "Sparky" on the police database to Lenzo Sherron. The recovered sum of $2093.00 was returned to Johnny Wilson of Wilson Mini-Mart. Hamm enumerated other items found near the store scene as: a heavy blue denim coat, a pair of blue jogging pants, a phone receiver, a light-colored t-shirt, and a sun visor.

After unsuccessfully attempting to lift fingerprints from the shotgun and the blue and green bags, Hamm eventually returned to his precinct station. There he received notice of the reported sighting of an individual at the Mini-Mart. Upon receiving further notice of the apprehension of a suspect, he proceeded to Reynolds Avenue. There Officer Mann had stopped the defendant who was wearing a white visor, a gray sweater with "something on the front," and blue jeans. The defendant was standing by a bicycle.

Sharon Rene Mosley had met the defendant in June or July of 2002. She had given the defendant what she identified as a "T-900 beeper." She explained that messages could be relayed between other T-900s by typing in the text. Ms. Mosley stated she had last communicated with the defendant by the pager the week prior to his arrest. Ms. Mosley was asked to display the signature page on the pager in evidence. After a bench conference, the trial judge stated:

> The record will reflect that on the Motorola pager, that it has the word, "Signature," then a colon and underneath that some symbol, and then the letters "I-L," then "Sparky." S-P-A-R-K-Y.

Ms. Mosley said she was called by the defendant from jail and was told that she should go and claim the pager from the police.

The State rested, and the defendant moved for a judgment of acquittal, which the trial court denied. The defendant then recalled Officer Dovice to establish that the defendant was arrested at 2:05 a.m.

Tracy Roberson was the mother of the defendant's child. On the night of September 29th, she worked the 11:00 p.m. to 7:00 a.m. shift at Maple Ridge Manor. The defendant was at her home when she left for work at 11:00 p.m. She had left the defendant her car, and he called her at 1:00 or 1:30 a.m. to tell her the car had broken down. When shown the pager, she identified it and said she had found it in her car. Upon reviewing the messages between the defendant and another woman, she threw the pager from her car window. On cross-examination, she stated she had known the

defendant for five years and knew his nickname as "Sparky." On the morning of September 30th, she found her car in the Milltown area of Dyersburg.

The defendant denied any participation in the robbery offense in question. He stated he was keeping his child but had left the child with his mother. While he was driving to Wal-Mart, Ms. Roberson's car broke down. The defendant walked to his uncle's house and obtained a bicycle. He then rode around in search of someone to help him with the car. He said the car was left on Reynolds Street near a big church. On cross-examination, the defendant admitted that the pager in evidence belonged to him and that he had last seen the pager on Saturday, the day before the robbery.

The State recalled Investigator Chris Hamm in rebuttal. Hamm stated that when arrested on Reynolds Street, the defendant made no mention of a car being disabled on that street.

The defendant, in his *pro se* appeal of right, poses the following issues for our review:
1) Whether the evidence was sufficient beyond a reasonable doubt to support the defendant's conviction for aggravated robbery;
2) Whether the State improperly withheld exculpatory and impeachment evidence; and
3) Whether the trial court failed to investigate a conflict of interest before appointing new counsel.

We note that the trial judge entered a written order denying the defendant's motion for a new trial. The order reflected that the defendant was advised against proceeding with an appeal without counsel. Nevertheless, the defendant rejected the assistance of the public defender and chose to proceed *pro se* with this appeal.

**Analysis**

**I. Sufficiency**

When an accused challenges the sufficiency of the evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this Court. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000). A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. See State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Furthermore, while a guilty verdict may result from purely circumstantial evidence, in order to sustain the conviction, the facts and circumstances of the offense "must be so strong and cogent as to exclude every other

reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971).

> Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear.

Tenn. Code Ann. § 39-13-401(a).

> Aggravated robbery is robbery as defined in section 39-13-401:
> (1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]

Tenn. Code Ann. § 39-13-402(a)(1).

The defendant contends that the lack of definite identification of him as the robber, his alibi defense, and the alleged loss of his paging device prior to the event all combined to create reasonable doubt and render the evidence insufficient to support the guilty verdict. The State asserts that the evidence is sufficient to prove the defendant's guilt beyond a reasonable doubt.

Our review indicates that there is a large segment of evidence which was undisputed. On September 29, 2003, at approximately 10:45 p.m., a masked man armed with a shotgun robbed the Wilson Mini-Mart in Dyersburg. Mary Ann Prince, one of two clerks at the store, testified that the experience scared her. Between 10:50 and 11:00 p.m., a witness noticed a black male wearing a gray sweatshirt, riding a bicycle fast, and looking back. This sighting was made at the intersection of Shelby and KW. Officers who responded to the store found numerous clothing items, worn by the robber, hidden in the immediate vicinity of the Mini-Mart. Along with the clothing, officers also found a .410 shotgun, shells, and a two-way pager. The pager's signature page had a name of "_il Sparky." It was ascertained that "Sparky" is the defendant's nickname, and the defendant admitted the pager belonged to him. The defendant admitted having the pager the day before the robbery. In the early morning hours of September 30th, following the robbery, two witnesses, Mary Ann Prince and Marissa Andrews, saw a black male on a bicycle go behind the Mini-Mart, dismount, and appear to search for something. They described him as wearing a white visor and a gray t-shirt or sweatshirt with an emblem on the front. After the man rode away, the women contacted the police. The defendant was arrested shortly thereafter, at 2:05 a.m. When apprehended, the defendant was wearing a gray sweater or sweatshirt and a white visor. According to one officer, the front of the defendant's shirt was adorned with a Mickey Mouse emblem. Although the defendant claimed later that his girlfriend's car was disabled on the same street on which he was apprehended, he made no mention of this at the time of arrest. All of the foregoing evidence was undisputed. We concede that it is largely circumstantial; however, it is strong circumstantial evidence.

The defendant's girlfriend testified that the defendant was with her at the time of the robbery. She also stated that she had thrown away the defendant's pager without his knowledge. The defendant testified in his own behalf that he was riding the bicycle in search of assistance to restart the disabled car. The jury, by their verdict, rejected this testimony as they were entitled to do. Wilson v. State, 574 S.W.2d 52, 55 (Tenn. Crim. App. 1978). The verdict of guilt removed the

defendant's presumption of innocence and raised a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1997). We conclude that the evidence was sufficient to prove the defendant's guilt beyond a reasonable doubt.

## II. Exculpatory and Impeachment Evidence

The defendant contends that by failing to introduce the clothes he was wearing at the time of his arrest, the State was suppressing impeachment evidence. The defendant contended that the clothing would show that Officer Dovice was lying about his description of the clothes. The defendant also contends that the State withheld fingerprint analysis from the shotgun, shells, and pager. The defendant claims this evidence would be exculpatory.

In Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S. Ct. at 1196-97; see also Sample v. State, 82 S.W.3d 267, 270 (Tenn. 2002). The duty to disclose extends to all "favorable information" regardless of whether the evidence is admissible at trial. Johnson v. State, 38 S.W.3d 52, 56 (Tenn. 2001). In United States v. Bagley, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380, 87 L. Ed. 2d 481 (1985), the Supreme Court held that both exculpatory and impeachment evidence fall under the Brady rule.

However, the State is not required to disclose information that the defendant already possesses or is able to obtain, State v. Marshall, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992), nor is the State required to disclose information which is not possessed by or under the control of the prosecution or other governmental agency. Id.

Before an accused is entitled to relief under this theory, he must establish several prerequisites: (a) the prosecution must have suppressed the evidence; (b) the evidence suppressed must have been favorable to the accused; and (c) the evidence must have been material. See Bagley, 473 U.S. at 674-75, 105 S. Ct. at 3379-80; Brady, 373 U.S. at 87, 83 S. Ct. at 1196-97; State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995). Evidence is considered material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the results of the proceeding would have been different. Kyles v. Whitley, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995); Edgin, 902 S.W.2d at 389.

In regard to the defendant's clothing, the defendant fails to show why he could not produce the clothing himself by subpoena. The record does not reflect nor does the defendant establish any unavailability of the clothing. The State was under no obligation to introduce evidence which the defendant himself could obtain. Furthermore, he has made no showing that the clothing was favorable to his defense.

The only reference in the record to fingerprint evidence was through Investigator Chris Hamm. He testified that he was unable to find fingerprints on the shotgun, the Wal-Mart bag, or the green money bag. There was no testimony concerning an attempt to take prints from the pager or the shotgun shells. The defendant, having failed to prove the existence of fingerprint evidence, cannot satisfy the other requirements of Brady. We conclude that this issue is without merit.

## III. Conflict of Interest

In the final issue, the defendant maintains that his right to a fair trial was violated due to the trial court's failure to investigate a conflict of interest before appointing substitute counsel. The defendant alleges that he was originally appointed to the public defender and that counsel was replaced by an assistant from the same office. We are pretermitted from consideration of this issue in two respects. The defendant, the appellant herein, has failed to furnish any record in reference to the substitution of counsel. It is the duty of the accused to provide a record which conveys a fair, accurate, and complete account of what transpired with regard to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); see State v. Taylor, 999 S.W.2d 941, 944 (Tenn. 1999).

In addition, this issue was not included in the defendant's motion for a new trial. The issue is thereby waived. Tenn. R. App. P. (3)(e); see State v. Walker, 910 S.W.2d 381, 386 (Tenn. 1995).

The conviction from the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE