# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### February 5, 2014 Session

## STATE OF TENNESSEE v. TIMOTHY NEAL STILES

**Appeal from the Circuit Court for Tipton County**
**No. 7319     Joseph H. Walker, Judge**

_____

**No. W2013-01164-CCA-R3-CD  -  Filed March 21, 2014**

_____

The defendant, Timothy Neal Stiles, was convicted by a jury of theft of property valued over $1,000 but under $10,000, a Class D felony. After trial, defense counsel investigated the ownership of the stolen vehicle, along with other discrepancies at trial, and introduced this evidence at the sentencing hearing and the hearing on the motion for a new trial. The trial court denied his motion for a new trial, and the defendant appeals. He asserts as error that: (1) the evidence is insufficient to support the verdict; (2) a variance exists between the crime charged in the indictment and the proof at trial; (3) the State knowingly presented false testimony or withheld exculpatory material; and (4) the trial court refused to authorize the court reporter to transcribe the sentencing hearing. After a thorough review of the record, we conclude there was no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Gary F. Antrican, District Public Defender; and Parker O. Dixon, Assistant District Public Defenders, for the appellant, Timothy Neal Stiles.

Robert E. Cooper, Jr., Attorney General & Reporter; David H. Findley, Senior Counsel; Mike Dunavant, District Attorney General; and Jason R. Poyner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

The defendant's arrest came about as the result of the theft of a trailer bearing a 2007 Grizzly 700 four-wheeler in the possession of the defendant's sometime employer, John Malone. The prosecution's theory was that the defendant stole the vehicle in order to pay $588 in court costs and probation fees that were due the day after the theft. The vehicle was parked in a locked shed at the victim's business, which consisted of the buying and selling of car parts. The key to the vehicle was kept in a wooden box in the locked shop building. Only the victim, his employee Roger Antle, and the victim's wife had access to the shop. At trial, the victim testified that the defendant, who last worked for him part-time around two weeks before the theft, had been asking for more work because he had fees due related to a prior conviction. The victim did not have additional employment for the defendant.

On January 4, 2012, the victim left his business sometime after dark, and at that time, the vehicle and trailer, worth about $5,500 and $700, were in the shed. The shed was secured with a lock. The victim testified that he believed that the shop was also locked. The next day, January 5, 2012, he received a phone call from Roger Antle informing him that the locks on the gate and the shed were missing. He concluded that these either had been opened and removed or had been cut off. The four-wheeler, the trailer, and the key kept in the box in the shop were missing, although nothing else in the shop appeared disturbed. The victim filed a police report with the Munford Police Department.

According to the defendant's probation officer, on January 5, 2012, the defendant had been "on extension" for his fines and fees and was expected at an appointment at the probation office that day "at which time he had to provide documentation that everything had been paid, and we would do the discharge."[1] The defendant, who had struggled to make payments most of the time and had never made such a large payment before, came in with a receipt for $473 paid to the court and paid an additional $115 at the probation office for his fees. If the defendant had not met the conditions of his probation, his probation officer would have filed a violation of probation report.

After the theft, the victim's suspicions soon settled on the defendant. Accordingly, he drove by the defendant's parents' home in Mississippi with Zack Antle, who was both Roger Antle's son and the defendant's roommate. Then on February 12, 2012, the victim, Taylor Scott,[2] and Johnny Mitchell went to the defendant's home in Shelby County to confront him regarding the theft. According to the victim, the defendant initially denied taking the four-wheeler but admitted to it after about fifteen minutes. The victim testified

---

[1]The defendant's probation officer also testified, in an unexplained contradiction, that the fees were due January 10.

[2]The record also appears to refer to Mr. Scott as "Tater."

that they spoke both inside and outside of the house, and he denied that either he or his companions threatened or coerced the defendant. It is not clear from the victim's testimony exactly when he claimed to have called the Memphis Police Department, but he testified that it was prior to the defendant confessing. He also testified that he had told the defendant that he would not pursue charges if the property were returned, and he testified that he called police after this discussion.

Officer Michael Bartlett of the Memphis Police Department, who asserted that he had no connection to the victim, defendant, or Munford police, responded to the confrontation at the defendant's home. Officer Bartlett testified that, "[i]t came in as a complaint call," and he did not know the nature of the complaint until he was on the scene, where he saw six to eight people outside. After the victim told him the impetus for the argument, he spoke to the defendant, who admitted taking the four-wheeler. The defendant stated that he did not know where it was at the time, as he had given it to his father. The defendant did not complain of being coerced, threatened, or assaulted, and Officer Bartlett saw no sign of a physical confrontation. Officer Bartlett detained the defendant in his squad car after the defendant's admission, but soon found out from the victim that the theft had taken place outside his jurisdiction. Following his superiors' instructions, he created a memo for the Munford police and released the defendant. Chuck Salayi, who had investigated the theft for the Munford Police Department and had previously been unsuccessful in contacting the defendant, acknowledged at trial that his supplement, based on Officer Bartlett's memo, stated that the defendant "spoke of" taking the four-wheeler and that the supplement did not state that the defendant admitted the crime. He testified that, to him, the two phrases were interchangeable.

The defendant attempted to undermine the State's case by calling into question the credibility of the State's witnesses, particularly the victim, and by introducing evidence that the defendant could not have sold the four-wheeler to his father on the night of the theft in order to raise money for court costs. The defendant's father is a truck driver, and the record-keeper of his employer testified that satellite tracking revealed that the defendant's father left Memphis at 2 a.m. on January 3, 2012 an did not return until 9:00 p.m. on January 5, 2012. The defendant's father testified that he had nothing to do with the theft.

The defendant's father's testimony also cast doubt on the State's version of events by offering an alternate source for the defendant's money. The defendant's mother had died one month prior to trial, and the defendant's father testified that she handled the money and that she had intended to testify at the trial. The defendant's father acknowledged that he had not brought or obtained any financial records showing a withdrawal from his bank account near the time. The defendant's father also testified that he did not believe the defendant's vehicle had a trailer hitch and that, while the defendant had sometimes driven a truck owned by him,

the truck was inoperable at the time.[3]

Defense counsel's questions attempted to elicit information that the victim was essentially on a witch hunt for the defendant and that the evidence against the defendant was manufactured by the victim and his confederates, including Zack Antle. The victim acknowledged during cross-examination that he found out after the theft of the four-wheeler that Zack Antle had stolen and pawned tools from his shop. Zack Antle helped him retrieve the tools from the pawn shop prior to taking the victim by the defendant's parents' home in Mississippi. The defendant tried to show that the victim had a bias in favor of the Antles by eliciting testimony that Roger Antle, Zack Antle's father, was the victim's sole regular employee and had been his friend since they were teens. The victim also testified to another theft on the property, a catalytic converter stolen from a car. The victim knew that the defendant had kept a four-wheeler at Roger Antle's home, but he denied having stolen it.

The defense questioned the victim regarding the origin of the four-wheeler. The victim testified that he "purchased" it from his nephew, Joshua Smith. He later clarified that he had traded his nephew a truck for the four-wheeler. He stated, "But I had the title and all to it. I turned it in to the deputy. So it was legally mine." He testified that the four-wheeler had suffered flood damage and was totaled by the insurance company. His nephew then bought it from the insurance company and traded it for the truck.

The defense also questioned the victim about the incident in Shelby County, attempting to show that the victim had chosen that location in order to obtain access to a biased police officer. The victim, however, denied that his nephew had ever been a Memphis police officer, and testified that he called Memphis police rather than Munford police because of the location of the defendant's house.

In the course of discussing the victim's call to the police, the following exchange took place:

> Q: "You took a – or you claim to have taken some kind of recording, didn't you?"
> . . . .
> A: "I didn't take no recording."
> Q: "You never would have said anything to anybody about a recording?"
> A: "No, sir. I don't even own a little recorder to take."

---

[3]The defendant's father's testimony is confused about when the truck was inoperable, and at one point, he testified it broke down in August 2012, well after the crime.

. . . .
Q: "You didn't – you never mentioned to the police or anybody
else about the existence of any type of recording?"
A: "No, sir, I did not."
. . . .
Q: "Have you ever heard any recording of Timmy Stiles
regarding this incident?"
A: "No, sir."

The defense then attempted to impeach this testimony when Investigator Salayi of the Munford Police Department testified. Defense counsel pointed out that Investigator Salayi's supplement mentioned a recording. Investigator Salayi then testified that the victim was there when the recording was reported to Investigator Salayi and that the victim knew about the recording and had told him about it.

Defense counsel vigorously pursued this line of questioning over the State's objection, indicating to the court that he desired a lost or destroyed evidence instruction. The trial court held a hearing outside the presence of the jury, where Investigator Salayi testified that the victim had brought Zack Antle to the police station and that the victim sat in a waiting area while Zack Antle played a recording he had purportedly made on his phone of the defendant confessing to the crime. Investigator Salayi attempted to transfer the recording to a CD, which he then provided to the prosecution, and which the prosecution gave to the defense. The defense, however, discovered that the CD contained completely unrelated material. A second copy of the CD proved to be similarly unrelated. The trial excluded testimony regarding the recording because it could not be authenticated, as Zack Antle was not called as a witness at trial, and Investigator Salayi testified that he could not recognize the voices on the recording. Defense counsel, however, ignored this ruling and continued to question Investigator Salayi about the recording. The trial court then allowed the defense to ask about the recording, ruling that the information which the jury had already been exposed to through defense counsel's questioning would be prejudicial to the State's case if the contents were not allowed to be put before the jury. Investigator Salayi then testified that he was provided with a recording purporting to be the drunken defendant bragging about stealing the four-wheeler. He testified that the victim called about the recording, but later stated that the victim did not call about it but rather came by and asked about it.. He acknowledged that he did not recognize the voices on the recording.

The jury was unable to reach a verdict on the burglary charge, and the State elected to dismiss that count. The jury convicted the defendant of theft of an item valued between $1,000 and $10,000, and the trial court sentenced him to two years' imprisonment, with sixty days to be served in jail and the remainder on probation. After trial, defense counsel

continued to investigate what he perceived as irregularities in the case. At the motion for a new trial, defense counsel introduced as an exhibit the records of Memphis police indicating that no 911 call was placed for the confrontation, but that the officer was flagged down. He also introduced the November 2010 bankruptcy filing of the victim and the November 2011 bankruptcy filing of the victim's nephew, neither of which shows the four-wheeler as an asset.

At the sentencing hearing, the defendant also apparently introduced the testimony of Cara Cannon, who had been married to the victim's nephew, that she had been the sole owner of the four-wheeler and that she did not transfer ownership to the victim. The victim was apparently called as a witness and subpoenaed to bring title to the vehicle, but he did not produce the title. However, this hearing is not part of the record on appeal, as the trial court denied the defendant's request for a transcript because he raised no sentencing issues. The defendant proceeded to file an extraordinary appeal to this court pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. While the appeal is not part of the record, this court's denial is. We concluded that the petitioner's appeal did not satisfy the requirements of Rule 10, particularly in the absence of a record, but noted that the procedure for correcting or modifying a record under Tennessee Rule of Appellate Procedure 24(e) and (g) was the proper course for correcting the record. This court highlighted specifically that the order denying the appeal "does not prevent the Petitioner from seeking to supplement the appellate record once it is filed in this Court." The defendant did not seek to supplement the record on appeal.

The defendant alleges that: (1) the evidence was insufficient to support the conviction; (2) questions about the ownership of the vehicle create a variance between the indictment and the proof at trial; (3) the defendant's due process right was violated by the State's presentation of false testimony and the State's failure to disclose exculpatory material; and (4) that the trial court erred in refusing to provide the indigent defendant a transcript of the sentencing hearing to support his issues on appeal.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant challenges the sufficiency of the evidence, asserting that the State did not prove that the victim was the owner of the vehicle, casting blame on Zack and Roger Antle as alternate suspects, and essentially alleging that the proof showed that the victim was maliciously prosecuting the defendant. He also asserts that the proof that the defendant's father was out of town dismantles the State's case.

An appellate court reviewing the sufficiency of the evidence must determine whether, considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999). If the evidence is insufficient to support a finding of guilt beyond a reasonable doubt, the court must set aside the conviction. Tenn. R. App. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn from the evidence. *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004). The appellate court may not substitute its inferences for those drawn by the trier of fact. *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000). "Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court does not re-weigh or re-evaluate the evidence." *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003). Accordingly, "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). In weighing the sufficiency of the evidence, circumstantial and direct evidence are treated the same, and the State is not required to exclude every reasonable hypothesis other than that of guilt. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). A guilty verdict replaces the presumption of innocence with a presumption of guilt. *Bland*, 958 S.W.2d at 659. On appeal, the defendant bears the burden of showing that the evidence is insufficient. *State v. Franklin*, 308 S.W.3d 799, 825 (Tenn. 2010).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103 (2010). "'Owner' means a person, other than the defendant, who has possession of or any interest other than a mortgage, deed of trust or security interest in property, even though that possession or interest is unlawful and without whose consent the defendant has no authority to exert control over the property." T.C.A. § 39-11-106(a)(26). Theft of property is a Class D felony when the value of the property is between $1,000 and $10,000. T.C.A. § 39-14-105(a)(3).

A criminal conviction cannot be based solely on the defendant's uncorroborated confession. *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012). The Tennessee Supreme Court has recently adopted the modified trustworthiness standard in determining whether a confession is sufficiently corroborated. *State v. Bishop*, __ S.W.3d __, 2014 WL 888198, at *26 (Tenn. Mar. 6, 2014). When the crime involves a tangible injury, "the State must provide substantial independent evidence tending to show that the defendant's statement is trustworthy, plus independent prima facie evidence that the injury actually occurred." *Id.* at *27. The State is not required to show that the injury was the result of a criminal act or to link the defendant to the crime. *Id.* (noting also that "[t]he corpus delicti rule does not

require corroboration of the defendant's identity as the perpetrator").

The victim testified that the vehicle belonged to him and that he stored it in a locked shed. The victim was therefore in possession of the vehicle and the defendant had no authority to exert control over the vehicle without the victim's consent. Accordingly, he was an "owner" of the property within the meaning of the statute. Because proving possession of the title is not an element of the crime, the uncontradicted proof of the victim's possession was sufficient to establish that the victim was the "owner" of the property.

Taken in the light most favorable to the State, the evidence established that the vehicle was removed from its storage place on the evening before the defendant was required to make a critical payment toward his probation costs and fees. The defendant had struggled to make previous smaller payments and had been looking for additional work to acquire the money. The day after the theft, the defendant was able to pay $588. Two witnesses also testified that the defendant admitted to taking the vehicle. The victim testified that the defendant admitted to taking the four-wheeler when the victim and two other men came to his home. Officer Bartlett also testified that the defendant admitted taking the four-wheeler. While the jury was presented with evidence that Zack Antle had also committed theft against the victim, that the victim was inclined to be more lenient with Zack Antle than with the defendant, that the victim's testimony regarding his knowledge of the recording was not accurate, and that Officer Bartlett was not dispatched through 911, this evidence merely goes to the credibility of the State's witnesses, which remains for the jury to assess. Neither does the proof that the defendant's father was uninvolved in the theft on the night of January 4 exonerate the defendant. The jury was free to credit part of his statement to police – that he stole the four-wheeler – while rejecting his statement that his father was involved. We conclude that the evidence is sufficient to sustain the conviction.

## II. Variance

The defendant next asserts that there is a variance between the indictment and the proof presented at trial due to questions regarding the ownership of the stolen vehicle. The indictment alleges that the defendant "did unlawfully, feloniously and knowingly obtain property to-wit: a single axle trailer and a 2007 Yamaha Grizzly 700 four wheeler . . . of John Malone without his effective consent . . . ." While the defendant's motion for a new trial explored extensively the victim's purported lack of ownership, it never alleged that there was a variance between the indictment and the proof at trial in this regard. Although this issue is therefore waived, the defendant would in any case not be entitled to relief.

Tennessee, in the more distant past, followed a stringent variance rule which dictated that if the indictment alleged one owner and the proof at trial showed another, the variance

was fatal. *State v. Cox*, 644 S.W.2d 692, 695-96 (Tenn. Crim. App. 1982). "A variance between an indictment and the proof in a criminal case is not material where the allegations and proof substantially correspond, the variance is not of a character which could have misled the defendant at trial and is not such as to deprive the accused of his right to be protected against another prosecution for the same offense." *State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984). In other words, a variance is not fatal if: "(1) the defendant is sufficiently informed of the charges levied against him so that he can adequately prepare for trial and, (2) the defendant is protected against a subsequent prosecution for the same offense based on double jeopardy grounds." *State v. Mayes*, 854 S.W.2d 638, 640 (Tenn. 1993). In pleading double jeopardy as a bar to a second prosecution, the defendant "is not limited to the wording in [the] count . . . but may rely on the entire record in the event of further prosecution for the same offense." *State v. Gardner*, No. M1999-02214-CCA-R3-CD, 2001 WL 306227, at *7 (Tenn. Crim. App. Mar. 30, 2001) (concluding that although victim of shooting was named in indictment and only identified by description during trial, the facts were sufficient to satisfy the rule in *Moss*).

The defendant's claim ultimately fails because there is simply no variance between the indictment and the proof introduced at trial. The indictment alleged, essentially, that the vehicle was taken from the possession of the victim. The proof at trial was that the victim had possession of the vehicle, that he had traded a truck for the vehicle, and that he had title to the vehicle. The proof at trial comports with the allegations of the indictment. Pointing to the issues raised at the sentencing hearing regarding title, the defense is essentially claiming a variance between certain evidence presented at the sentencing hearing and the allegations of the indictment.

However, even if the proof at trial had included evidence that the defendant did not have good title, there would be no fatal variance. The defendant cites to the civil code for the proposition that the owner of a vehicle must be in possession of the title. However, the criminal code presents a much broader definition of owner: "a person, other than the defendant, who has possession of or any interest other than a mortgage, deed of trust or security interest in property, even though that possession or interest is unlawful and without whose consent the defendant has no authority to exert control over the property." T.C.A. § 39-11-106(a)(26).

In *State v. Moss*, the Tennessee Supreme Court upheld a conviction where the indictment alleged that the property belonged to a partnership, but it in reality belonged to a corporation. *Moss*, 662 S.W.2d at 592, 593. Likewise, in *State v. Cox*, this court concluded that a mistake regarding the name of the property owner was not fatal where a unique license plate number both apprised the defendant of the substance of the charges and protected him against a subsequent prosecution. *Cox*, 644 S.W.2d at 696. In this case, the victim listed in

the indictment had possession of the vehicle, and the indictment sufficiently informed the defendant of the charges against him. The victim, by dint of having maintained exclusive possession of the vehicle for a period of one to two years, and without whose consent the defendant has no authority to exert control over the property, was an owner within the meaning of the statute.[4] Although no vehicle identification was included in the indictment, the record has been sufficiently developed that the defendant may rely on the instant record to raise a bar to any subsequent prosecution for the same theft. *Gardner*, 2001 WL 306227, at *7; *see also State v. March*, 293 S.W.3d 576, 592 (Tenn. Crim. App. 2008) (concluding that law firm was an owner of stolen property, although the law firm retained a claim against clients whose funds had been misdirected); *State v. Parker*, No. M2001-00773-CCA-R3-CD, 2002 WL 31852850, at *2 (Tenn. Crim. App. Dec. 18, 2002) (holding that pawn shop employees were "owners" of the property and that State did not have to prove they had title to the property); *State v. Adkins*, 710 S.W.2d 525, 528 (Tenn. Crim. App. 1985) (concluding that there was no fatal variance where indictment alleged property belonged to husband when it was owned by wife, as "[a]ny legal interest or special property interest in property stolen will support an allegation of ownership"); *State v. Hawk*, 688 S.W.2d 467, 470 (Tenn. Crim. App. 1985) (upholding conviction when one indictment named drivers of vehicles as victims and the second named their parents, who held title, because the vehicle identification numbers would prevent subsequent prosecution). The defendant is not entitled to relief on this issue.

### III. *Brady* Violations

The defendant argues that his due process rights were violated by the State of Tennessee. In *Brady v. Maryland*, the United States Supreme Court held that the suppression of evidence favorable to the defendant is a due process violation where the evidence is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). The rule in *Brady* applies both to undisclosed information favorable to the defendant and to false testimony knowingly presented by the prosecution. *United States v. Agurs*, 427 U.S. 97, 103-07 (1976); *State v. Edgin*, 902 S.W.2d 387, 389 (Tenn. 1995).

### A. False Testimony

---

[4]Although we do not rely on the events of the sentencing hearing, we note that according to the defendant's brief, Cara Cannon, who held title prior to the vehicle being totaled, asserts no property interest in the vehicle, and acknowledged that she lost title to it in a bankruptcy proceeding.

The defendant claims that false testimony given by the State's witnesses violated his due process rights. The Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, sections 8 and 9 of the Tennessee Constitution prohibit the State from knowingly using false testimony. *State v. Spurlock*, 874 S.W.2d 602, 617 (Tenn. Crim. App. 1993). The State may not elicit false testimony and has an affirmative duty to correct false testimony. *Id.* at 618. "When false testimony is material, the accused is entitled to a new trial notwithstanding the fact that the false testimony is related to matters of impeachment." *Id.* at 621. The defendant is entitled to a new trial if he can demonstrate that the State presented false testimony, that the State knew the testimony was false, and that the testimony was material. *State v. Cureton*, 38 S.W.3d 64, 74-75 (Tenn. Crim. App. 2000). In evaluating materiality, the court must determine whether there is a reasonable probability that the outcome of the trial would have been different were it not for the State's use of false testimony. *Shupe v. State*, No. 03C019804-CC-00126, 1999 WL 88966, at *3-4 (Tenn. Crim. App. Feb. 9, 1999); *Bell v. State*, No. 03C01-9210-CR-00364, 1995 WL 113420, at *8 (Tenn. Crim. App. Mar. 15, 1995). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The defendant asserts that the victim's testimony that he "purchased" the vehicle was false, as well as his assertion that he traded a truck for it. He asserts that this alleged misrepresentation was material because he believes that the defendant could not have been charged with taking the four-wheeler from the victim's possession if the victim had no legal interest in it. As noted above, the victim's possession of the vehicle was sufficient to establish him as an owner under the statute, and this evidence is accordingly not, as the defendant asserts, a threshold question. T.C.A. § 39-11-106(a)(26); *State v. Parker*, No. M2001-00773-CCA-R3-CD, 2002 WL 31852850, at *2 (Tenn. Crim. App. Dec. 18, 2002). Furthermore, the defendant has not demonstrated either that the victim's testimony was false or that the State was aware of any falsity. According to the defendant's representation, the proof at the sentencing hearing might have at most established that the victim's possession was not lawful and that he did not have good title. This evidence does not create a reasonable probability that the outcome of the trial would have been different.

He next asserts that the victim and Officer Bartlett gave false testimony regarding how the Memphis Police Department became involved in the dispute. He asserts that these discrepancies are material because evidence of falsehood impeaches the witnesses's testimony and calls into question the credibility of Officer Bartlett and the victim, who were the only witnesses to the defendant's confessions. "When false testimony is material, the accused is entitled to a new trial notwithstanding the fact that the false testimony is related to matters of impeachment." *Spurlock*, 874 S.W.2d at 621. Again, however, even assuming that the 911 report establishes that the victim and Officer Bartlett gave false testimony that

Officer Bartlett was dispatched and not flagged down, the defendant cannot show that the State knew that the testimony was false. Neither can he show a reasonable probability that, had the jury been presented with the true manner in which the Memphis Police Department was summoned, the outcome of the proceeding would have been different.

Finally, the defendant also highlights the victim's testimony that he did not know about the recording, which was contradicted by Investigator Salayi. We note that, because the questions about the recording appeared to refer to a recording of the confrontation in Shelby County, it is not clear whether the victim was merely confused or was attempting to answer misleadingly. The victim's testimony was that he had not heard any recording and that he had not mentioned it to law enforcement. Investigator's Salayi's testimony was that the victim knew of the recording. He also testified that the victim told him about the recording, that the victim called about it, and that the victim did not call about it but came by. However, there is no evidence that the State knew that the victim's answers were false or misleading. The State did not intend to introduce the recording or elicit any testimony regarding the recording. Neither can the defendant demonstrate the materiality of this testimony. The fact that the victim apparently knew of the recording made by Zack Antle was more than adequately delved into during trial. Accordingly, there is no reasonable probability that the outcome of the trial would have been different if the State had corrected the testimony of the victim to reflect the fact that he was aware of the recording.

## B. Undisclosed Evidence Favorable to the Accused

The defendant also asserts that the State failed to disclose evidence favorable to him. The items which the defendant claims were not disclosed are the victim's copy of the vehicle's title and the recording of the defendant's confession. However, the defendant's motion for a new trial only asserts that the victim withheld this potentially exculpatory material from the State, and it thus appears that the issue is waived.

Even if the defendant had not waived the argument, he is not entitled to relief. While the State is not required to reveal its entire file to the defense, the State must disclose evidence which, if suppressed, would deprive the accused of a fair trial. *State v. Davis*, 823 S.W.2d 217, 218 (Tenn. Crim. App. 1991). A failure to disclose favorable evidence is a denial of due process "irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In order to establish a violation based on the withholding of favorable material, the defendant must demonstrate: (1) that the defendant requested the information or that it was obviously exculpatory; (2) that the State suppressed the information; (3) that the information was favorable to the accused; and (4) that the information was material. *Hutchison v. State*, 118 S.W.3d 720, 736 (Tenn. Crim. App. 2003) (citing *State v. Edgin*, 902 S.W.2d 387, 390 (Tenn. 1995)). Evidence is material if there is

a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. *State v. Cureton*, 38 S.W.3d 64, 77 (Tenn. Crim. App. 2000) (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

The defendant cannot show that the recording was favorable to him because the only evidence regarding its contents indicated that it was a recording of a confession, purportedly by the defendant. The title of the four-wheeler, which the victim testified he gave to the State, is not in itself exculpatory, as the State was not required to prove that the victim had title to the vehicle; the evidence at trial established that he had possession of the vehicle and was therefore an owner within the meaning of the statute. The defendant asserts that the title could have been used to impeach the victim. Impeachment evidence, as well as exculpatory evidence, must be disclosed to the defense. *Davis*, 823 S.W.2d at 218. However, even if we were to assume that the title definitively established some irregularity or illegality in the victim's acquisition of the vehicle and could be used as impeachment material, the defendant cannot show that the evidence was material; that is, he cannot demonstrate a reasonable probability that a jury would not have convicted him of stealing the four-wheeler from the victim had he been able to show that the victim was dishonest about his acquisition of the four-wheeler or that his possession was unlawful. Accordingly, this issue is also without merit.

## IV. Transcript of the Sentencing Hearing

The defendant next asserts error in the trial court's refusal to authorize a transcript of the sentencing hearing. The defendant states that the hearing contained the testimony of Cara Cannon, the (apparent) title-holder of the vehicle, as well as the victim's refusal to testify and his attempt to invoke his Fifth Amendment right against self-incrimination. The defendant also refers to a copy of the title brought by Cara Cannon and to the victim's failure to bring title despite subpoena. The State counters that, because the defendant did not seek to supplement the record on appeal as outlined in the denial of his Rule 10 application to this court, he has waived the issue.

Tennessee Rule of Appellate Procedure 36(a) indicates that "[n]othing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." We agree with the State that the defendant cannot assert error in the exclusion of the transcript when he did not seek to supplement the record as laid out in this court's order denying his application for relief under Rule 10.

We nevertheless note that a trial court does not determine what portions of the proceedings are to be transcribed by the court reporter; instead it is the defendant who

determines this, and "[c]onsequently, it is error for a trial judge to question defense counsel initially, make a determination as to the validity of the issues, and provide the defendant with a transcript limited in scope to the issues the trial judge determines have merit." *State v. Draper*, 800 S.W.2d 489, 495 (Tenn. Crim. App. 1990); *see also* Tenn. R. Crim. P. 37(c)(2). Under *Draper*, if a party to the proceedings questions the need for a complete transcript, the trial judge must hold a hearing and the burden is on the objecting party to show that the transcript is unnecessary. *Id.* at 496. The defendant is entitled to a transcript of the proceedings relevant to issues raised in the motion for a new trial, relevant to issues which would result in dismissal of the prosecution, and relevant to issues, like sentencing, not required to be raised in a motion for a new trial, provided the defendant asserts that these issues will be raised on appeal. *Id.* at 496-97. Of course, this court also has the authority to remand the case for supplementation of the record. *See State v. Keeton*, No. M2009-01928-SC-R11-CD, 2012 WL 5947291, at *1 (Tenn. Nov. 21, 2012).

However, even if this issue were not waived, the evidence which the defendant alleges was presented at the hearing did not undermine the sufficiency of the evidence, did not establish a variance from the indictment, and did not establish a due process violation under *Brady*. Accordingly, the absence of this evidence does not prevent review of the defendant's issues. *See State v. Smith*, No. 01C01-9205-CC-00152, 1995 WL 84021, at *29 (Tenn. Crim. App. Mar. 2, 1995) (holding that "the particular circumstances presented in this case do not reflect that the trial court's refusal [of a transcript] improperly limited the defendant's ability to obtain appellate review of a viable issue").

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

-14-